IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

INTERNATIONAL LABOR            )
MANAGEMENT CORPORATION,        )
                               )
          Plaintiff,           )
                               )
     v.                        )        1:14CV231
                               )
THOMAS E. PEREZ, in his        )
Official capacity as United    )
States Secretary of Labor, and )
UNITED STATES DEPARTMENT OF    )
LABOR,                         )
                               )
          Defendants.          )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

      Plaintiff International Labor Management Corporation

("ILMC") has moved for a temporary restraining order,

preliminary injunction, and a writ of mandamus. (Doc. 14.)  The

Government has responded in opposition (Doc. 22), and Plaintiff

has replied (Doc. 29).  On April 7, 2014, this court heard

argument from the parties.  The motion is ripe for ruling.

      Plaintiff assists companies in need of foreign, seasonal

labor to navigate the complex regulatory process authorizing

these foreign workers.  Plaintiff claims the Department of Labor

("DOL") has failed to certify Plaintiff's applications on behalf

of employers for H-2A and H-2B workers within the statutory or regulatory deadlines, or acted outside its statutorily mandated timeframes to approve these worker applications.  This delay, Plaintiff argues, has caused damage both to Plaintiff, as agent for employers, and to Plaintiff's employer-clients.  Plaintiff contends it will suffer substantial harm if the problem is not immediately rectified.  The Government does not dispute that the DOL has been untimely in these applications; rather, it argues that (1) Plaintiff does not have standing to bring these claims; (2) the statutory deadlines are not subject to enforcement by this court; and (3) that delayed processing of the applications was to ensure that the information in the applications was accurate.  For the reasons set forth herein, this court finds as follows: (1) Plaintiff has standing, as authorized agent for its employer-clients, under <u>Lexmark v. Static Control</u>; (2) the seven-day deadline within which the DOL is required to either issue a notice of deficiency or notice of acceptance is a mandatory deadline with which the DOL may be required to comply; (3) the failure by the DOL to issue a notice of deficiency or notice of acceptance causes delay to the certification process and related damage to Plaintiff and its employer-clients; and (4) Plaintiff is entitled to a preliminary injunction compelling the DOL to issue either a notice of deficiency or notice of

acceptance within the required seven-day period and to issue the certification described in 8 U.S.C. § 1188(a)(1) if the employer-client has complied with the criteria.

I. **RELEVANT FACTS**

    A. **H-2A and H-2B Programs**

ILMC is an agent for a number of farming and/or agriculture employers participating in the H-2A and H-2B programs. Those two programs, H-2A (8 U.S.C. § 1101(a)(15)(H)(ii)(a)) and H-2B (8 U.S.C. § 1101(a)(15)(H)(ii)(b)), are thoroughly described in an opinion of the Fourth Circuit, North Carolina Growers' Ass'n, Inc. v. United Farm Workers, 702 F.3d 755 (4th Cir. 2012), and will not be further described here except as necessary to this order.

Generally, a company in need of foreign workers to fill jobs for which no American workers are available is required to apply to the Department of Labor for a certificate issued pursuant to 8 U.S.C. § 1188(c)(1). The application process and related deadlines, as established by statute and regulation, are different for the H-2A and H-2B programs.

With respect to the H-2A program, the DOL cannot require that the employer's application be filed more than 45 days before the date of need. 8 U.S.C. § 1188(c)(1). Once the application is filed, "[t]he employer shall be notified in

- 3 -

writing within seven days of the date of filing" if it is deficient. 8 U.S.C. § 1188(c)(2)(A) (emphasis added). Those deficiencies may include matters such as the absence of an original signature of the employer (20 C.F.R. § 655.130(d)). If a notice of deficiency is sent, the employer must be given the opportunity to correct any deficiencies and if the application is corrected within five days, the otherwise applicable timeframes remain unchanged.

If the certifying officer determines that the application is complete, then regulations require that the certifying officer notify the employer within seven calendar days of the receipt of the application. See 20 C.F.R. § 655.143(a) ("When the CO determines the Application for Temporary Employment Certification and job order are complete and meet the requirements set forth in this subpart, the CO will notify the employer within 7 calendar days of the CO's receipt of the Application for Temporary Employment Certification."). Of particular significance to this opinion, the notification of receipt contains a directive to the employer requiring positive recruitment of United States workers, undertaken in accordance with the regulations and directives of the certifying officer. See 20 C.F.R. § 655.143(b)(2) (The notice must "[d]irect the employer to engage in positive recruitment of U.S. workers in a

manner consistent with § 655.154 and to submit a report of its

positive recruitment efforts as specified in § 655.156".).[1]

8 U.S.C. § 1188(c)(3)(A) requires that the Secretary of

Labor:

> [S]hall make, not later than 30 days before the date
> such labor or services are first required to be
> performed, the certification described in subsection
> (a)(1) if --
>
>> (i) the employer has complied with the criteria
>> for certification (including criteria for the
>> recruitment of eligible individuals as prescribed
>> by the Secretary).

The statute contains two schedule requirements for the DOL:

a notice of deficiency to be issued within seven days of the

application and a certification to be issued not later than

thirty days before the date the labor is required.  The

"certification described in subsection (a)(1)," which shall be

---

[1] The Department of Labor has advanced an argument that "ILMC filed several applications for employer clients in the H-2A and H-2B programs with DOL, but the agency has not yet approved some of the applications because the employers have not completed the mandatory test of the domestic labor market." (Defs.' Mem. in Opp'n to Pl.'s Mot. for Emergency Injunctive Relief (Doc. 22) at 10.)  This argument is at best disingenuous and at worst highly misleading.  Specifically, the employer cannot complete the mandatory test of the domestic labor market until the certifying officer issues a notice of acceptance containing the requested test.  The DOL's argument suggests that any delay arises from the employer's responsibility to complete positive recruitment.  However, the record reflects, and this court finds, that any delay in testing the market was caused solely by the DOL in failing to timely issue a notice of acceptance.

made no later than 30 days before the date labor is required, is the following:

(a) Conditions for approval of H-2A petitions

(1) A petition to import an alien as an H-2A worker (as defined in subsection (i)(2) of this section) may not be approved by the Attorney General unless the petitioner has applied to the Secretary of Labor for a certification that --

    (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and

    (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a).

As particularly relevant to this case, the failure by the DOL to timely issue either a notice of deficiency or a notice of acceptance can substantially delay the entire certification process period. Applications are not filed more than 45 days prior to the date of need and certification is required at least 30 days prior to the date of need. The entire H-2A certification process is therefore required to occur within a 15-day period. That period allows for seven days of initial review and then seven to eight days of positive recruitment of American workers prior to certification.

The H-2B program does not contain similar statutory deadlines. However, the H-2B program does contain a regulatory scheme with required action by the DOL to occur within particular timeframes. Specifically, the applicable regulations, 20 C.F.R. §§ 655.31[2] and 655.33[3], require the DOL to either issue a notice of deficiency or a notice of acceptance within 7 days of receipt of an H-2B application.

---

[2] 20 C.F.R. § 655.31 states in part:

Notification timeline. If the CO [certifying officer] determines the Application for Temporary Employment Certification and/or job order is incomplete, contains errors or inaccuracies, or does not meet the requirements set forth in this subpart, the CO will notify the employer within 7 business days from the CO's receipt of the Application for Temporary Employment Certification. If applicable, the Notice of Deficiency will include job order deficiencies identified by the SWA under § 655.16. The CO will send a copy of the Notice of Deficiency to the SWA serving the area of intended employment identified by the employer on its job order, and if applicable, to the employer's attorney or agent.

[3] 20 C.F.R. § 655.33 states in part:

Notification timeline. If the CO determines the Application for Temporary Employment Certification and job order are complete and meet the requirements of this subpart, the CO will notify the employer in writing within 7 business days from the date the CO received the Application for Temporary Employment Certification and job order or modification thereof. A copy of the Notice of Acceptance will be sent to the SWA serving the area of intended employment identified by the employer on its job order and, if applicable, to the employer's attorney or agent.

In 2013, ILMC acted as agent on behalf of a number of employers seeking workers pursuant to the H-2A and H-2B programs. According to ILMC, during 2013, the DOL generally followed the statutory and regulatory guidelines with respect to its employer-clients. (See Pl.'s Reply Br. in Resp. to Defs.' Mem., Ex. 58 (Doc. 29-6)(comparing applicable timeframes for selected clients in 2013 and 2014).)[4]

### B.  ILMC's Present Claims

ILMC's problems appear to have arisen following the indictment of ILMC, its owner, and its president on January 31, 2014, for allegedly submitting fraudulent H-2A and H-2B applications. That case, United States v. Eury, et al., 1:14CR39 (M.D.N.C. 2014), has been scheduled for trial in September of 2014 upon the defendants' pleas of not guilty.

According to the Complaint and subsequent pleadings, the applications for certification filed by ILMC this year, following the January Indictment, were ignored by the DOL or otherwise not timely processed. As to the H-2A applications, no notices of deficiency or acceptance were issued within the relevant seven-day time period. As a result, no positive

---

[4] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

recruitment steps could be taken by the employer.  Even more significantly, certificates were not issued by the DOL at least 30 days prior to the date of need, and in many instances no certificate was issued by the date of need.  According to ILMC, this failure to act and failure to act in a timely fashion by the Department of Labor caused damage, both to ILMC and its employer-clients.

## II. __ANALYSIS__

"A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief pendente lite of the type available after the trial."  Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009) cert. granted, judgment vacated, 559 U.S. 1089 (2010), and reissued in relevant part sub nom. Real Truth About Obama, Inc. v. F.E.C., 607 F.3d 355 (4th Cir. 2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

The party seeking the injunction must show that the extraordinary remedy is warranted by a "clear showing."  Id. at

22; Real Truth, 575 F.3d at 345. "[T]he substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction." Tchienkou v. Net Trust Mortg., Civil Action No. 3:10-CV-00023, 2010 WL 2375882, at *1 n* (W.D. Va. June 9, 2010) (citing Commonwealth of Va. v. Kelly, 29 F.3d 145, 147 (4th Cir. 1994)).

Plaintiff contends that it has presented evidence which entitles it to injunctive relief. Defendants contend, initially, that Plaintiff has failed to establish standing to bring this claim. This court will address standing before moving to the merits of Plaintiff's claim for injunctive relief.

## A. **Standing**

Defendants assert that Plaintiff lacks prudential standing because its interests are not within the "zone of interests" contemplated by the statute. Defendants argue that because Plaintiff is essentially a middle-man (agent) between employers and migrant workers, it does not fall under the zone of interests that 8 U.S.C. § 1188 is meant to protect — namely, employers, domestic workers, and foreign workers.

The Supreme Court has recently clarified the contours of prudential, as opposed to constitutional, standing. The Court began by noting that the very notion of prudential standing was at odds with the Court's "recent reaffirmation of the principle

that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." Lexmark Int'l, Inc. v. Static Control Components, Inc., ____ U.S. ____, ____, 134 S. Ct. 1377, 1386 (2014) (internal quotation marks omitted). One of these prudential standing considerations was whether "a plaintiff's complaint fall[s] within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751 (1984). The Lexmark Court characterized the notion of "'prudential standing' is a misnomer as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute." Lexmark, 134 S. Ct. at 1387 (quoting Ass'n of Battery Recyclers, Inc. v. EPA, 716 F.3d 667, 675–76 (D.D.C. 2013) (concurring opinion)). In other words, the Court phrased the inquiry as "[w]hether a plaintiff comes within 'the "zone of interests"' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Lexmark, 134 S. Ct. at 1387.

In Lexmark, the Court noted with specific reference to the Administrative Procedure Act ("APA"), that the zone of interests test "is not 'especially demanding.'" Id. at 1389 (quoting Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,

567 U.S. ____, ____, 132 S. Ct. 2199, 2210 (2012)).  The Lexmark

Court went on to describe the zone of interests tests as it

related to the Administrative Procedure Act as follows:

> In [the Administrative Procedure Act] context we have
> often "conspicuously included the word 'arguably' in
> the test to indicate that the benefit of any doubt
> goes to the plaintiff," and have said that the test
> "forecloses suit only when a plaintiff's 'interests
> are so marginally related to or inconsistent with the
> purposes implicit in the statute that it cannot
> reasonably be assumed that'" Congress authorized that
> plaintiff to sue.  [Patchak] at ____, 132 S. Ct., at
> 2210. That lenient approach is an appropriate means of
> preserving the flexibility of the APA's omnibus
> judicial-review provision, which permits suit for
> violations of numerous statutes of varying character
> that do not themselves include causes of action for
> judicial review.

Lexmark, 134 S. Ct. at 1389.

The Supreme Court has further noted that congressional

intent when enacting the Administrative Procedure Act was "to

make agency action presumptively reviewable" and that the Court

does not "require any indication of congressional purpose to

benefit the would-be plaintiff." Patchak, 132 S. Ct. at 2210

(internal quotation marks omitted).

Under this standard, Plaintiff's interests here are not "so

marginally related" to the statute that "it cannot be reasonably

assumed that Congress authorized" Plaintiff to sue. For

instance, the D.C. Circuit has held that American employers,

union members who were allegedly displaced by foreign workers,

and alien workers challenging denials of labor certifications all were properly within the zone of interests to challenge the H-2A certification process. See Pesikoff v. Sec'y of Labor, 501 F.2d 757, 760 (D.C. Cir. 1974)(Employers); Int'l Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798, 805 (D.C. Cir. 1985)(Union Workers); De Jesus Ramirez v. Reich, 156 F.3d 1273, 1276 (D.C. Cir. 1998)(Alien Workers). As one court noted, the common theme among these plaintiffs is that "they all have some proverbial skin in the game — they all have an economic interest that is arguably protected or regulated by the INA's certification procedures." Mendoza v. Solis, 924 F. Supp. 2d 307, 323 (D.D.C. 2013).

Likewise, here, Plaintiff has an adequate interest to create standing to bring suit. Plaintiff is an authorized agent of various employers, and as an agent, Plaintiff represents the interests of employers requiring migrant workers, including those employers' dealings before the Office of Foreign Labor

Certification.[5]  (See 20 C.F.R. § 655.133; Complaint, Ex. 2,

Agency & Indemnity Agreement for H-2A Program (Doc. 2-1).)

Plaintiff alleges injury in fact to both itself, as a result of

damage to its business, and to its employer-clients, based on

their inability to timely recruit foreign workers, all as a

result of the Department of Labor's failure to operate within

its statutorily established timeframes.  Alleged monetary

damages aside, Plaintiff also claims damage to ILMC's reputation

and a related loss of goodwill, claims that are largely

substantiated by the affidavits submitted by ILMC's employer-

clients.  Ultimately, Plaintiff's business centers on helping

employers navigate regulatory complexities in the H-2A and H-2B

programs.  Due to the DOL's actions (or inactions), Plaintiff

---

[5] "Agent" is defined in 20 C.F.R. § 655.103(b) as:

A legal entity or person, such as an association
of agricultural employers, or an attorney for an
association, that:

(1) Is authorized to act on behalf of the employer for
temporary agricultural labor certification purposes;

(2) Is not itself an employer, or a joint employer, as
defined in this subpart with respect to a specific
application; and

(3) Is not under suspension, debarment, expulsion, or
disbarment from practice before any court, the
Department, the Executive Office for Immigration
Review, or DHS under 8 CFR 292.3 or 1003.101.

has been unable conduct its business.  This court finds that

Plaintiff's role in the H-2A and H-2B process affords it enough

interest to "arguably" fall within the APA's zone of interests.

Therefore, this court finds, under the standard established

by Lexmark, that Plaintiff has standing to bring these claims.

**B.    Likelihood of Success on the Merits**

Plaintiff requests the following relief:

> [T]he entry of a Temporary Restraining Order and
> Preliminary Injunction that requires Defendants to
> comply with applicable statutory and regulatory
> requirements and that requires them to refrain from
> further violating its [sic] statutory and regulatory
> obligations to issue approvals of filed applications
> and labor certifications in conformance with the law,
> to cease sending unauthorized questionnaires and
> duplicative requests . . . . In the alternative or in
> addition, ILMC asks for the entry of a writ of
> mandamus to compel the Secretary to comply with clear
> statutory and regulatory duties.

(Pl.'s Mot. for TRO, Prelim. Inj. & Writ of Mandamus ("Pl.'s

Mot.") (Doc. 14) at 1.)  "A plaintiff seeking a preliminary

injunction must establish that he is likely to succeed on the

merits, that he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips

in his favor, and that an injunction is in the public interest."

Winter, 555 U.S. at 20.  This court will first address the

likelihood of success on the merits, reviewing the requested

relief under the H-2A and H-2B programs separately.

- 15 -

### 1. **H-2A Program Statutory and Regulatory Deadlines**

As to its claims brought under the H-2A program, Plaintiff contends it has established a "likelihood of success on the merits" because Defendants have failed to act within the time deadlines established by the statutory and regulatory scheme. As more fully described in the factual discussion found herein, the H-2A statutes and regulations require that an employer file an application no more than 45 days prior to the date of need (8 U.S.C. § 1188(c)(1)); that the DOL issue a notice of deficiency or acceptance within 7 days (8 U.S.C. § 1188(c)(2) and 20 C.F.R. § 655.143); and that the DOL issue a certification not later than 30 days prior to the date of need (8 U.S.C. § 1188(c)(3)).

With respect to the H-2A program, Plaintiff contends that its evidence establishes that Defendants have failed to comply with the mandatory deadlines described above. The Government acknowledges that the plain language of 8 U.S.C. § 1188(c)(3)(a) requires the DOL to grant the certification of the application "no later than 30 days" before the date of need. Nevertheless, the Government argues that the statute's failure to "specify a consequence for noncompliance with the timing provision" is "fatal" to "Plaintiff's attempt to strip [the] DOL of authority to act outside the statutory timeframe." (Defs.' Mem. in Opp'n

to Pl.'s Mot. for Emergency Injunctive Relief ("Defs.' Mem. in Opp'n") (Doc. 22) at 13.)  Therefore, as the Government argues, "[the] DOL is not precluded from acting outside the statutory timeframe to ensure the employers' compliance with the substantive terms of the statute."[6] (Id.)

The Government relies on Brock v. Pierce Cnty., 476 U.S. 253 (1986), to support its argument that the lack of a statutory consequence for failing to abide by the timing requirements does not allow this court to strip the Department of Labor the authority to act outside this timeline.  In Brock, the Court was presented with a statute requiring the Secretary of Labor to take mandatory action within a set timeframe.  Id. at 254-55. The Brock Court held "that the mere use of the word 'shall' in [the statute], standing alone, is not enough to remove the Secretary's power to act after 120 days."  Id. at 262.  This general principle was reiterated by the Fourth Circuit in Holland v. Pardee Coal Co., 269 F.3d 424 (4th Cir. 2001), in which the court determined the effect of the failure of the Social Security Administration to abide by a strict deadline to

---

[6] The Government also advances some policy arguments ("indicia of Congressional intent") to show that the timing requirements are procedural, not jurisdictional. Because this court is of the opinion that the jurisdictional/procedural dichotomy is not dispositive in the present case in light of the statutory and regulatory language, the submitted evidence is irrelevant here.

assign eligible beneficiaries. See id. at 430 (interpreting a provision which stated the "SSA 'shall' assign eligible beneficiaries to the proper coal operators 'before October 1, 1993'"). There, plaintiff argued that the Social Security Administration's failure to act by that time-certain deadline stripped it of its jurisdiction. Even in light of the disputed statute's use of the mandatory word "shall," the Fourth Circuit, relying on Brock, disagreed and held that nothing in the text of the statute or the legislative history could be read to void action by the Social Security Administration after the statutory deadline. Id. at 438; see also Barnhart v. Peabody Coal Co., 537 U.S. 149, 158 (2003) ("Nor, since Brock, have we ever construed a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later.").

This court agrees with the Government's statement of the law as set forth by Brock and Barnhart; however, this court disagrees with Brock's applicability to the present matter. The Government's argument fails to recognize both the mandatory and discretionary components of the H-2A process. The Government impermissibly conflates this court's inability to divest the DOL of jurisdiction to decide an H-2A petition after the running of the statutory time limits with this court's ability to provide

equitable relief to ensure the DOL acts within its statutory and regulatory mandates.  In other words, providing equitable relief to ensure the DOL abides by mandatory statutory limits is wholly divorced from an order disallowing the DOL from acting once the statutorily-derived time limits have run.  The latter is precluded by Brock; the former is untouched.  See Sierra Pac. Indus. v. Lyng, 866 F.2d 1099, 1111-12 (9th Cir. 1989) (rejecting an argument that Brock strips a district court of the ability to fashion equitable relief under the APA in response to an agency official's failure to act).  As such, the Government's attempt to differentiate the statute on jurisdictional versus procedural grounds is not persuasive.

This court therefore finds that it is not precluded from granting the requested injunctive relief, at least in part.

Nevertheless, Plaintiff's argument fails to acknowledge the more weighty concerns of when and how a federal court may properly enjoin a federal agency. The Administrative Procedure Act authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  "[A]gency action," in turn is defined to include an agency's "failure to act."  5 U.S.C. § 551(13).  Under the

Administrative Procedure Act, a court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C § 706(1).

The Supreme Court has limited the reach of § 706(1) to "empower[ing] a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing <u>how</u> it shall act.'"  <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004) (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947) (emphasis added)).  For instance, in <u>Norton</u>, the Court heard a challenge to a provision under the Federal Land Policy Management Act requiring the "[Bureau of Land Management] . . . to continue to manage [protected areas] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness."  <u>See</u> <u>id.</u> at 65 (quoting 43 U.S.C. § 1782(c)).  The plaintiffs claimed that the permitted use of off-road vehicles was causing degradation to the land in violation of this statutory provision.  The Court rejected this challenge, holding that "Section 1782(c) is mandatory as to the object to be achieved, but it leaves [the Bureau of Land Management] a great deal of discretion in deciding how to achieve it. It assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of [off-road vehicle] use."  <u>Id.</u> at 66.  In summarizing its holding, the Court

concluded that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it is <u>required</u> to take." <u>Id.</u> at 64. Particularly relevant to this case, the Court held that "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." <u>Id.</u> at 65.

In <u>Hondros v. United States Civil Serv. Comm'n</u>, 720 F.2d 278 (3d Cir. 1983), the Third Circuit held:

> Although we hold that mandamus will not support an order appointing Smith to permanent employment, Smith is not thereby deprived of all judicial remedies. Section 10(e) of the APA provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (1976). This section further provides that the reviewing court shall "hold unlawful" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a) (1976). It is apparent that an "arbitrary and capricious" action is one that is "unlawful" within the meaning of section 706(1), and that when an agency arbitrarily or capriciously withholds action, we may "compel" the agency to act under this section. Accordingly, section 706(1) authorizes injunctive relief to compel an appointment arbitrarily or capriciously withheld.

> Our interpretation accords with that of the Tenth and District of Columbia Circuits. These courts have held that section 706(1) is a source of injunctive relief to remedy an arbitrary or capricious delay or denial of agency action. See <u>Carpet, Linoleum & Tile Layers, Local Union No. 419 v. Brown</u>, 656 F.2d 564,

566-67 (10th Cir. 1981); <u>Health Systems Agency of Oklahoma, Inc. v. Norman</u>, 589 F.2d 486, 492-93 (10th Cir. 1978) (failure to accept application an abuse of discretion; court directed that application be considered); <u>M. Steinthal & Co., Inc. v. Seamans</u>, 455 F.2d 1289, 1305-06 (D.C. Cir. 1971) (preliminary injunction may issue when requisite standards are met); <u>see also</u> <u>Wheelabrator Corp. v. Chafee</u>, 455 F.2d 1306, 1316-17 (D.C. Cir. 1971). Indeed, any other interpretation would render the standards of section 706 meaningless; were it otherwise, the federal courts would be powerless to redress agency action found arbitrary or capricious.

<u>Id.</u> at 297-98.

This court concludes that the deadlines themselves are mandatory, not discretionary, allowing this court to "compel the agency to act." However, the required positive recruitment of U.S. workers (20 C.F.R. § 655.143) and the certification (8 U.S.C. § 1188(a)(1)) constitute discretionary acts by the agency. Based upon the record presented, this court finds that it does not have jurisdiction to enjoin Defendants with respect to any specific positive recruitment efforts or to direct the DOL to find a particular application deficient or sufficient. Nor may this court order the DOL to find that particular circumstances are sufficient to justify certification pursuant to 8 U.S.C. § 1188(a)(1). However, where the agency has simply failed to act in a timely fashion, that failure to act is a mandatory act subject to judicial order.

This court therefore finds that Plaintiff has established the requisite likelihood of success on the merits of its claim that Defendants have failed to act within the mandatory time deadlines fixed by both statute and regulation.

Defendants further argue, in response to ILMC's motion, that ILMC's mandamus claim fails because, "[a]fter [the] DOL learned that ILMC may have misrepresented the number of foreign workers that its client employers needed, see ILMC Indictment . . . DOL contacted the employers directly to confirm that the employers authorized the filing of the applications and that they had an actual need for the number of workers represented on the application forms." (Defs.' Mem. in Opp'n (Doc. 22) at 19.) DOL's argument that its actions constituted reasonable investigative delays is not persuasive. First, the H-2A enforcement mechanism for suspected misconduct is addressed in 20 C.F.R. § 655.130(e), providing that "[i]nformation received in the course of processing Applications for Temporary Employment Certification and program integrity measures such as audits may be forwarded from OFLC to Wage and Hour Division for enforcement purposes." Second, this audit provision does not purport to alter the aforementioned timing mechanism for processing the applications.

As a result, this court concludes that the DOL, to the extent it believes further investigation of the currently pending applications and of ILMC's conduct is merited, should proceed through the investigative process set forth in the regulations.  It should not proceed in an unauthorized fashion that unfairly harms both ILMC and, perhaps more importantly, innocent employer-clients on whose behalf ILMC acts as an agent.

Based on the foregoing, this court finds that Plaintiff has shown a substantial likelihood of success on the merits.  That is, Plaintiff has demonstrated that Defendants have failed to comply with the mandatory deadlines established by the H-2A statutes and regulations.  Defendants have failed to issue the required notices of deficiency or acceptance within 7 days of application and have failed to issue certifications not later than 30 days prior to the date of need.

## 2. <u>H-2B Program Regulatory Deadlines</u>

Unlike the H-2A statutory deadlines, the H-2B timing deadlines are entirely promulgated in the Code of Federal Regulations.  The applicable regulations mandate that within seven days from receipt, the DOL must either accept the H-2B application or send the employer notice detailing why the

application is deficient. (See 20 C.F.R. § 655.31 & 20 C.F.R.
§ 655.33.)[7] Even though the deadlines under the H-2B program are
not set forth in statutes like their H-2A counterparts, the
Accardi doctrine provides "that when an agency fails to follow
its own procedures or regulations, that agency's actions are
generally invalid." Nader v. Blair, 549 F.3d 953, 962 (4th Cir.
2008) (citing United States ex rel. Accardi v. Shaughnessy, 347
U.S. 260, 268 (1954)). "The fact that a particular regulation or
procedure is not mandated by the Constitution or by statute is
of no moment for purposes of an analysis under the Accardi
doctrine." United States v. Morgan, 193 F.3d 252, 266 (4th Cir.
1999); see Serv. v. Dulles, 354 U.S. 363, 388 (1957) ("While it
is of course true that . . . the Secretary was not obligated to
impose upon himself these more rigorous substantive and
procedural standards . . . having done so he could not, so long
as the [r]egulations remained unchanged, proceed without regard
to them.").

---

[7] In its reply brief, Plaintiff cites 20 C.F.R. § 655.23 for
the proposition that the H-2B regulations contain a 7-day
deadline for the DOL to issue a "request for information" in
connection with an H-2B application. (Doc. 29 at 3.)  20 C.F.R.
§ 655.23 was "removed and reserved" in 2012.  77 Fed. Reg. at
10160 (Feb. 21, 2012). However, the currently applicable
regulations set forth a similar 7-day deadline for the DOL to
either issue a notice of deficiency or acceptance as to H-2B
applications.  (See 20 C.F.R. § 655.31 & 20 C.F.R. § 655.33.)

This court finds that the <u>Accardi</u> doctrine renders mandatory the seven-day deadline to either accept an application or notify an employer of the application's deficiency.  Because these deadlines detailed in the regulations are non-discretionary, this court finds they are subject to the same equitable relief as their H-2A statutory counterparts.

In addition to establishing a likelihood of success on the merits, Plaintiff must also show that it "is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  <u>Winter</u>, 555 U.S. at 20.

## C. <u>Irreparable Harm</u>

Plaintiff contends that it will suffer irreparable harm to its business interests in the absence of injunctive relief and, additionally, that its employer-clients will suffer irreparable harm as a result of an inability to acquire workers by their date of need.

### 1. <u>Irreparable Harm to ILMC</u>

With respect to the element of immediate, irreparable harm, Plaintiff argues:

> Should the Defendants be able to proceed in continuing
> to disregard their statutory and regulatory
> requirements in applying those programs, thus
> stonewalling applications where ILMC appears as the
> employer's agent, without authorization then ILMC will

> clearly be put out of business as it will not be able
> to meet its clients' needs.  Defendants' actions are
> costing ILMC thousands of dollars in unrecoverable
> staff costs and hours of time devoted to ameliorating
> DOL's actions when their time is already in short
> supply . . . . Indeed, if Defendants' intent is to put
> ILMC out of business then they could hardly have
> adopted a more effective approach . . . .

(Pl.'s Br. in Supp. of Mot. for TRO, Prelim. Inj. & <u>Writ of</u>

Mandamus ("Pl.'s Br.") (Doc. 19) at 15.)

The support for this argument appears to be the affidavit

of Craig S. Eury, III. (Declaration of Craig. S. Eury, III

("Eury Decl.") (Doc. 18).)  Mr. Eury is a Recruitment Specialist

employed by ILMC.  (<u>Id.</u> ¶ 2.)  Mr. Eury states that "ILMC has

suffered and continues to suffer severe and substantial

irreparable harms by way of loss of reputation, loss of good

will, loss of the confidence of clients, as well as expenditures

of time and money that can never be recovered."  (<u>Id.</u> ¶ 7.)

Mr. Eury does not specifically quantify the amount of money

ILMC is losing.  Furthermore, his conclusory allegation appears

contrary to the H-2A agency agreement which provides, "The

Client agrees to pay the ILMC any assessment made by the ILMC as

the Client's share of legal and any other expense or liability

incurred by ILMC in defending, prosecuting or settling any

application for H-2A certification, claim, litigation . . . ."

(<u>See</u> Doc. 2-1 at 2.) Such a provision at least suggests that

ILMC is entitled to some reimbursement of expenses "incurred by ILMC in . . . prosecuting . . . any application for H-2A certification . . . ."

This court has been unable to find any factual support for the arguments contained in Plaintiff's brief that "Defendants' actions are costing ILMC thousands of dollars in unrecoverable staff costs and hours of time devoted to ameliorating DOL's actions." (Pl.'s Br. (Doc. 19) at 15.) Mr. Eury's affidavit does not contain any information suggesting that ILMC has lost employer-clients at this point, nor does it suggest ILMC has lost revenues from its employer-clients.

This court therefore finds that any specific financial loss to ILMC is speculative.

In his affidavit, Mr. Eury further states:

> I often answer the telephone at ILMC. In 2014, a number of clients have expressed to me their frustration and concern about not getting their H-2A workers. To the best of my knowledge, these frustrations and concerns have been expressed to my co-workers at ILMC, as well. ILMC has a number of competitors in this business, and in my opinion, we will lose a significant number of our clients in 2015 if this situation does not resolve as soon as possible.

(Eury Decl. (Doc. 18) ¶ 13.) Underlying Mr. Eury's representation that he will lose clients is the assumption that the DOL's conduct outlined in this case is limited to ILMC and

not occurring with any other agents.  This assumption may indeed be correct; however, no evidence of that fact exists in this case.  To put this point in perspective, Plaintiff has submitted the affidavit of Joe Wilson, who states, "If it were to turn out that the U.S. Department of Labor was delaying certification of workers only for ILMC's clients, then, as satisfied as I have been with ILMC, I would have no choice but to find a new agent for 2015."  (Declaration of Joe Wilson (Doc. 18-1 ¶ 6.) Similarly, the affidavits of Bradley Bell (Declaration of Bradley Bell (Doc. 18-2) ¶ 5), Eddie Hobgood (Declaration of Eddie Hobgood (Doc. 18-3) ¶ 4), and Deborah Brady Goad (Declaration of Deborah Brady Goad (Doc. 18-5) ¶ 4) all state that if ILMC is the only agent having problems getting certifications, then they will find a new agent next year.  Neil Wright phrases his concern slightly differently, and it appears he may consider another agent if he is not able to receive workers in a timely fashion through ILMC.  (Declaration of Neil Wright (Doc. 18-4) ¶ 5.)

This court has considered whether an inference could be fairly drawn that ILMC is the only agent experiencing delays given the timing of the Indictment and the issues ILMC has confronted; however, this court does not find such inference reasonable at this stage.

Mr. Eury's affidavit identifies the possible loss of "clients in 2015 if this situation does not resolve as soon as possible."  (Eury Decl. (Doc. 18-1) ¶ 13.)  That representation is consistent with the affidavits of ILMC's employer-clients described above.  However, the future impact in 2015 fails to describe why ILMC will suffer irreparable harm through loss of clients in the absence of preliminary relief.

Nevertheless, with respect to injury suffered by ILMC, this court does find that ILMC has presented evidence that its employer-clients are not satisfied with the results obtained by ILMC and that ILMC has suffered severe and substantial harm by way of loss of reputation, loss of goodwill, and loss of the confidence of its clients.  ILMC has also suffered some indeterminate administrative expense in addressing the delays caused by the DOL.

The damage to ILMC's reputation and loss of goodwill constitutes irreparable harm for purposes of injunctive relief. In Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546 (4th Cir. 1994), the Fourth Circuit analyzed a finding of irreparable harm based on a loss of goodwill:

> Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Danielson v. Local 275, 479 F.2d 1033,

1037 (2d Cir. 1973). Thus, when "the record indicates
that [plaintiff's loss] is a matter of simple
mathematic calculation," a plaintiff fails to
establish irreparable injury for preliminary
injunction purposes. <u>Graham v. Triangle Pub.</u>, 344
F.2d 775, 776 (3d Cir. 1965). However, when the
failure to grant preliminary relief creates the
possibility of permanent loss of customers to a
competitor or the loss of goodwill, the irreparable
injury prong is satisfied. <u>Merrill Lynch, Pearce,
Fenner and Smith v. Bradley</u>, 756 F.2d 1048, 1055 (4th
Cir. 1985).

<u>Id.</u> at 551-52.

The Fourth Circuit concluded that "the threat of a

permanent loss of customers and the potential loss of goodwill

also support a finding of irreparable harm." <u>Id.</u> at 552; <u>see</u>

<u>Philips Elecs. N. Am. Corp. v. Hope</u>, 631 F. Supp. 2d 705, 711

(M.D.N.C. 2009) (finding irreparable harm where, in the absence

of an injunction, plaintiff would suffer damage to its customer

relationships).  Therefore, this court finds that ILMC will

suffer irreparable harm in the absence of injunctive relief.

Plaintiff also asks for declaratory relief as to the DOL's

ongoing practice of requiring additional forms and information

before processing Plaintiff's applications, including

unauthorized questionnaires sent to employers without notice to

Plaintiff.  Following an inquiry by this court, Defendants have

filed a brief and affidavit indicating they no longer intend to

send those questionnaires to the employers.  (Defs.' Supplement

Statement (Doc. 34); Declaration of William Carlson (Doc. 34-1) ¶ 6.) While this court does not find the voluntary cessation of sending such questionnaires moots the issue, see, e.g., United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case."), it does not find injunctive relief presently appropriate. Based on counsel's representations to this court, this court finds that the unauthorized questionnaires do not constitute the type of irreparable harm that would provide a basis to issue injunctive relief, except to the extent such actions would delay the timely processing of applications. However, to the extent that this practice continues and causes delays in processing applications, this court reserves the right to reopen this issue as to both the merits of irreparable harm as well as address Defendants' representations to this court.

### 2. __ILMC's Employer-Clients__

As to ILMC's employer-clients, this court finds, as described in the affidavits provided by ILMC, that those clients are suffering and will continue to suffer immediate and irreparable harm as a result of Defendants' delays. Each of the affidavits submitted describes farm and business harm caused by the failure to receive H-2A workers in a timely fashion. (See

Docs. 18-1, 2, 3, 4, and 5.)  Such injury is consistent with the application process, as the employer is required to note a "Date of Need" on the application (the date by which the employer needs workers for the farming operations).  The employers, in accordance with the business plans they have created for the current year, have immediate need for workers to assist in their farming operations.  The lost farming revenues resulting from this shortage of labor constitute irreparable harm, as those losses are not recoverable against the United States.

The Fourth Circuit has not directly addressed whether unrecoverable economic losses constitute irreparable harm. However, this court notes that other courts have evaluated the issue and reached a similar conclusion.  See Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 426 (8th Cir. 1996); Foltz v. U.S. News & World Report, Inc., 613 F. Supp. 634, 643 (D.D.C. 1985); Ill. Bell Tel. Co. v. Hurley, No. 05 C 1149, 2005 WL 735968, at *7 (N.D. Ill. Mar. 29, 2005); Hollywood Healthcare Corp. v. Deltec, Inc., No. Civ. 04-1713 (RHK/AJB), 2004 WL 1118610, at *11 (D. Minn. May 17, 2004).  While it is beyond dispute that economic losses generally do not constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable.  See Iowa Utils. Bd., 109 F.3d at 426 (stating that the cases that declare economic losses are

not irreparable harm rest on the assumption that those losses are recoverable); McGean v. Montgomery Cnty., Nos. 94-2067, 94-2194, 1996 WL 295315, at *1 (4th Cir. June, 5, 1996) ("Harm is not considered irreparable if it can be compensated by money damages . . . ."); Dickson v. Morrison, No. 98-2446, 1999 WL 543230, at *8 (4th Cir. July 27, 1999) ([The plaintiff's] alleged harm was not irreparable because she could receive money damages . . . ."). As previously stated, Plaintiff's economic losses in this case are not recoverable. See O'Brien v. Appomattox County, No. 02-2019, 2003 WL 21711347, at *2 (4th Cir. July 24, 2003) (per curiam) (upholding district court's issuance of a preliminary injunction and finding that plaintiffs' inability to recover their economic losses during the pending litigation constituted irreparable harm).[8]

### D.   **Harm to Defendants if Injunctive Relief is Granted**

Before injunctive relief may issue, this court must determine whether "the balance of equities tips in [Plaintiff's] favor." Winter, 555 U.S. at 20. Since Plaintiff has met its

_____

[8] In spite of this finding, an issue remains undecided and has not been addressed by the parties. Specifically, this court has not been able to find any authority to support a conclusion that an agent, in seeking injunctive relief, may rely upon the irreparable harm to its principal to secure relief where the principal is not a party to the case. Nevertheless, because this court finds that there is irreparable harm to ILMC, and that there are no pending applications which the DOL has not acted upon, this court does not resolve this issue.

burden of proving that it is likely to suffer irreparable harm absent injunctive relief, the court now turns to assessing the harm Defendants will suffer if Plaintiff's motion is granted.

Defendants have not presented evidence of any harm that they might suffer if an injunction is granted, at least not with respect to the mandatory deadlines of the statutes and regulations. The only harm that might be inferred from Defendants' arguments is the inherent limitation on Defendants' ability to investigate thoroughly the applications submitted by a corporate agent currently under indictment for fraud. However, the regulations provide procedures for investigation and ultimately debarment should the circumstances warrant. These same regulations do not permit delaying the applicable deadlines for ad hoc investigation procedures. As a result, this court concludes the balance of equities falls in favor of granting the relief requested.

### E.  **Public Interest**

In terms of the public interest, this court finds that the public interest is furthered when agencies act within the scope of their authority and in a manner required by the applicable rules.

**F.**   <u>**Mootness**</u>

During the pending proceedings in this case, some of the untimely applications submitted by Plaintiff have been acted upon by Defendants, thus rendering any requested injunctive relief moot as to those employers.

"A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." <u>Del Monte Fresh Produce Co. v. United States</u>, 570 F.3d 316, 321 (D.C. Cir. 2009) (internal quotation marks omitted). However, there are two exceptions to this rule. "In at least two kinds of cases the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot." <u>Id.</u> As the D.C. Circuit explained in <u>Del Monte</u>:

> First, a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy. [<u>City of Houston, Tex. v. Dep't of Housing & Urban Dev.</u>, 24 F.3d 1421 (D.C. Cir. 1994] at 1429. <u>In Super Tire Engineering v. McCorkle</u>, 416 U.S. 115, 125, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974), the Supreme Court held that although a claim for injunctive relief preventing payment of welfare benefits during a strike was moot because the strike had ended, the employers' request for declaratory relief was not moot because the state's ongoing policy of paying strike benefits was, on the employers' theory of the case, "immediately and directly injurious to the

[employers'] economic positions." Of course, plaintiffs challenging an ongoing policy must demonstrate "standing to bring such a forward-looking challenge and [that] the request for declaratory relief is ripe." City of Houston, 24 F.3d at 1429.

Second, even though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the "plaintiff has made no challenge to [an] ongoing underlying policy, but merely attacks an isolated agency action," so long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." Id. (internal quotation marks and citations omitted). In Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 594 n.6, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999), the Supreme Court held that the challenge by two mental patients to their confinement in a segregated environment was not mooted by their post-complaint transfers because "in view of the multiple institutional placements [they had] experienced, the controversy they brought to court [was] capable of repetition, yet evading review." (internal quotation marks and citations omitted); see also Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 578, 107 S. Ct. 1419, 94 L. Ed. 2d 577 (1987). Del Monte has chosen this second route by alleging that OFAC's failure to act promptly on Del Monte's August 2007 license application is capable of repetition yet evades review.

Id. at 321-22.

Plaintiff contends that even though delayed applications are now being processed, there are continuing applications which may be delayed.  This process would therefore appear to be subject to the "capable of repetition yet evading review" exception to mootness.

Under this exception to mootness, the plaintiff must "demonstrate that '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" Clarke v. United States, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (quoting Murphy v. Hunt, 455 U.S. 478, 482 (1982) (alteration original)).

This court finds that Plaintiff has presented evidence satisfying each of these requirements. Specifically, the challenged action of approval is, "in its duration, too short to be fully litigated prior to its cessation or expiration." The entire H-2A certification process is required to be completed within roughly two weeks. Furthermore, in light of the conduct of Defendants from February, 2014 to present, it certainly appears ILMC's applications are reasonably likely to be subjected to the same delays again. Other than agreeing to stop sending the questionnaires, Defendants have offered no explanation for the delays, nor have they provided any assurances that the delays will stop in the absence of the use of the questionnaires.

G.    **Mandatory Injunctive Relief**

Plaintiff requests injunctive relief that "requires Defendants to comply with applicable statutory and regulatory requirements . . . [and] to issue approvals of filed applications and labor certifications in conformance with the law."  (Pl.'s Mot. (Doc. 14) at 1.)  Defendants argue that Plaintiff is seeking mandatory injunctive relief.

"Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."  Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980); see Calvary Christian Ctr. v. City of Fredericksburg, 800 F. Supp. 2d 760, 765 (E.D. Va. 2011) ("The Fourth Circuit has viewed mandatory relief with caution . . . ."). "That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind."  In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003).

The relief Plaintiff requests can be characterized either as an order affirmatively mandating that Defendants act within the applicable statutory and regulatory timeframes (changing the

status quo), or as an order prohibiting Defendants from acting outside the applicable timeframes (reverting back to the statutory status quo).  The distinction between the two is merely a semantic one.  Under either characterization, Plaintiff is entitled to equitable relief requiring Defendants to abide by the applicable H-2A and H-2B timelines.  As discussed above, this court has found irreparable harm caused by Defendants' actions.  Moreover, the longer the delays in Defendants' actions, the greater the harm, especially to ILMC's employer-clients whose agricultural labor needs are unusually time-sensitive.  Even under a cautious approach to the request for relief, this court finds the relief specified below warranted for the reasons previously stated.

**III. CONCLUSION**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction and <u>Writ of Mandamus</u> (Doc. 14) is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the Department of Labor shall process all applications filed by Plaintiff International Labor Management Corporation for H-2A and H-2B workers in accordance with the statutory and regulatory deadlines, as follows:

1.  The Department of Labor shall issue a notice of deficiency or a notice of acceptance as to ILMC's H-2A applications within 7 days of receipt, in accordance with 8 U.S.C. § 1188(c) and 20 C.F.R. § 655.143(a);

2.  The Department of Labor shall issue a notice of deficiency or a notice of acceptance as to ILMC's H-2B applications within 7 days of receipt in accordance with 20 C.F.R. § 655.31 and 20 C.F.R. § 655.33; and

3.  The Department of Labor shall make, not later than 30 days before the date such labor or services are first required to be performed, the certification described in subsection 8 U.S.C. § 1188(a)(1) if the employer has complied with the criteria for certification (including criteria for the recruitment of eligible individuals as prescribed by the Secretary), all as set forth in 8 U.S.C. § 1188(c)(3).

**IT IS SO ORDERED.**

This the 25th day of April, 2014.

_____
United States District Judge