**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **INTERNATIONAL LABOR** )<br>**MANAGEMENT CORPORATION,** )<br> )<br>**234 Cameron Avenue** )<br>**Vass, NC  28394** )<br> )<br>     **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**THOMAS E. PEREZ, IN HIS** )<br>**OFFICIAL CAPACITY AS UNITED** )<br>**STATES SECRETARY OF LABOR** )<br>**and UNITED STATES** )<br>**DEPARTMENT OF LABOR,** )<br> )<br>**200 Constitution Ave., N.W.** )<br>**Washington, DC  20210** )<br> )<br>     **Defendants.** )<br> ) | **CASE NO.: 1:14-CV-231** |

## FIRST AMENDED COMPLAINT

Plaintiff **INTERNATIONAL LABOR MANAGEMENT CORPORATION** ("ILMC") hereby brings this First Amended Complaint against Defendants, **THOMAS E. PEREZ** in his official capacity of Secretary of the United States Department of Labor ("the Secretary"), and the **UNITED STATES DEPARTMENT OF LABOR** ("DOL") alleging as follows:

## INTRODUCTION

1.    ILMC brings this action for declaratory and preliminary and permanent injunctive relief as well as for the issuance of a *writ of mandamus* because of the failure

of DOL's Employment and Training Administration ("ETA"), Office of Foreign Labor Certification ("OFLC") through its national and subsidiary certifying officers under the direction of the Secretary to fulfill mandatory statutory deadline requirements as well as requirements of DOL regulations in connection with duly filed and completed applications filed by ILMC, as the duly authorized agent, pursuant to current DOL regulations and long-standing practices and procedures, for numerous employers that need a legal, temporary foreign workforce (pursuant to the H-2A or H-2B foreign temporary worker program) because they have not found able, willing, qualified and available U.S. workers to perform their seasonal or other temporary jobs. A listing of affected employers along with information concerning the number of jobs they needed to fill on a timely basis to operate their businesses is attached as Exhibit 1[1] and will be explained below. In all cases, ILMC and its employer clients have previously filed with DOL/ETA/OFLC their respective bona fide agency agreements between ILMC and each respective employer on whose behalf ILMC is acting as its "agent" in connection with the employer's dealings with OFLC. Exhibits 2 and 3**.** The role of ILMC and other agents as a legal entity or person who is authorized to act on behalf of an employer for temporary agricultural labor certification purposes has been recognized by DOL for more than 30 years. This role of "agent" is specifically recognized and authorized under the H-

---

[1] Exhibits to this First Amended Complaint are numbered as the same Exhibit number used in the original Complaint filed in this action on March 19, 2014 [DE 1], but some Exhibits to the original Complaint are not included as part of this First Amended Complaint. This First Amended Complaint does not include Exhibits 36, 37, 39 and 40 to the original Complaint.

2A rules at 20 CFR § 655.102(b) (definition "agent") (2013) and under the H-2B rules at 20 CFR § 655.4 (definition "agent") (2012 at p. 476); 73 Fed. Reg. 78053 (Dec. 19, 2008). As set forth below, the H-2B rules contained in the 2013 edition of the Code of Federal Regulations were enjoined from implementation and have not been in effect. With an exception not relevant in this case, and subject ultimately to potential judicial determination that DOL has no authority to issue regulations governing the H-2B program, the relevant H-2B regulations are those issued by DOL on December 19, 2008, at 73 Fed. Reg. 78020-78067 (Dec. 19, 2008) as provided by DOL Notice published at 77 Fed. Reg. 28764-65 (May 16, 2012). The Code of Federal Regulations text for 2012 contains both the regulations issued in 2008 set forth above and those that are enjoined and are not in effect. Citations in this Amended Complaint that reference the H-2B regulations cite to the 2008 Federal Register Notice in which they were promulgated or to the 2012 edition of the Code of Federal Regulations with the appropriate page number on which the text is provided. Citations in this Complaint to H-2A regulations reference those published in the 2013 Code of Federal Regulations. In all cases, ILMC has assisted its client employers to apply for certifications to be issued by DOL in accordance with requirements of 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and (b) that respectively provide for the issuance of visas to allow temporary foreign workers to come to the United States to perform seasonal or other temporary agricultural work in the so-called H-2A Program and non-agricultural work in the case of the so-called H-2B Program. Despite the urgent need for timely processing of all client applications by DOL's OFLC and despite

FPDOCS 30018604.1

repeated efforts by ILMC at the administrative agency level (*see* sample correspondence between ILMC and DOL attached as Exhibits 4-28), ILMC and its clients were subjected to what appeared to be a concerted, continuing, and growing pattern of 1) unlawful delays by DOL in processing H-2A and H-2B applications for authorizations for employers to seek visas authorizing entry of workers from the Department of Homeland Security, Citizenship and Immigration Services ("USCIS"), after certification by DOL, and 2) unlawful delays in the issuance of labor certifications so that applications for such visas could not be made on a timely basis to obtain needed workers in the timeframes needed by the employers. Examples of improper actions by DOL and failures by DOL to act, despite statutory requirements for prompt action by DOL in these time-sensitive matters affecting the livelihoods of affected employers, their U.S. employees, ILMC and its employees and indeed everyone depending on the timely presence of workers to perform jobs, include the following:

(a)     Multiple failures to comply with statutory deadlines as well as regulatory deadlines provided for in the H-2A Program as set forth at 8 U.S.C. § 1188(c) as well as DOL's own regulatory deadlines in 20 CFR § 655 Subpart A and Subpart B. These statutory deadlines include a requirement that DOL provide notice "in writing within seven days of the date of filing" if an employer's application does not meet [DOL's] standards …." 8 U.S.C. § 1188(c)(2)(A). By statute, the written notice that must be provided by seven days "shall include the

FPDOCS 30018604.1

reasons" the H-2A application does not meet such standards. 8 U.S.C. § 1188(c)(2)(B);

(b)     Multiple failures by DOL to comply with statutory as well as regulatory deadlines to issue certification in the H-2A Program "not later than 30 days before the date [foreign workers'] labor or services are first required to be performed ...." 8 U.S.C. § 1188(c)(3)(A);

(c)     Multiple failures to comply with regulatory deadlines as provided for in the H-2B Program as set forth below; and

(d)     In some instances, neither ILMC nor its client employers received any communication from Defendants at all over periods of weeks, despite repeated efforts to learn the status of applications ILMC filed on behalf of its client employers.

(e)     Instead of following regulations and established procedures, when Defendants communicated with anyone at all concerning the pending applications, instead of communicating with ILMC, the Defendants communicated directly with ILMC's clients, not even alerting ILMC to the fact they were communicating with ILMC's clients instead of with ILMC. Bypassing ILMC in this way caused great confusion because both ILMC's clients and ILMC rightfully expected the Defendants to communicate with ILMC on behalf of the respective ILMC clients. All H-2A and all H-2B applications for certifications ILMC filed on behalf of its clients contained signed authorizations, under oath or affirmation, submitted by its

clients for the Defendants and DOL's staff to communicate with ILMC on behalf of the respective ILMC client employers. DOL made information demands directly to ILMC clients, without notice to ILMC, despite the full compliance by ILMC and its clients with all requirements for designations of ILMC as their agent under 20 U.S.C. § 655 Subpart A (H-2B) and Subpart B (H-2A). (*See* Exhibits 29 (Item I), 30, 31 (Item I), 32.). In light of the Defendants' commitments contained in Defendants' Supplemental Statement filed in this case file as Docket Entry [DE] 34 and the accompanying Declaration of William Carlson pursuant to 28 U.S.C.A. § 1746 [DE 34-1], that include among other commitments that the Questionnaire submitted as Exhibit 33, which Defendants had required ILMC clients to complete and return, will not be used, ILMC makes no current claim for the issuance of an injunction against resumption of demands by the Defendants that employers submit responses to the "Questionnaire" in a form similar to that contained in Exhibit 33. ILMC does ask for a permanent injunction forbidding the Defendants from bypassing ILMC in connection with communicating concerning applications filed on behalf of its employer clients on behalf of which duly executed authorizations for Defendants to deal with ILMC have been submitted to Defendants. ILMC does not object to Defendants providing information simultaneously to it and to its client employers as Defendants routinely have done in the past and asks that it and its clients be treated without discrimination or

FPDOCS 30018604.1

retaliation by the Defendants in those and other matters affecting the interests of ILMC and its client employers.

2.      From the perspective of ILMC, if someone were deliberately trying to put it and its employer clients out of business, that person could hardly have adopted a more effective approach than DOL followed and the approach that the Secretary allowed this season in connection with applications submitted and pending on behalf of ILMC's H-2A and H-2B employers clients before entry by this Court of its Memorandum Opinion and Order issued April 25, 2014 [DE 38], as will be alleged in more detail below.

3.      ILMC values its excellent reputation as an experienced agent for H-2A and H-2B employers whose staff both know applicable legal requirements and vigorously pursue the rights of their ILMC clients.  Copies of the Agency Agreements between ILMC and its H-2A and its H-2B clients are attached as Exhibits 2 and 3 respectively. The actions and omissions of the DOL as set forth in this Complaint caused ILMC to suffer immediate, continuing, growing, serious and irreparable harm to its business reputation, as well as to its financial standing and to its client employers who rely on the availability of a timely arriving, legal foreign workforce to supplement the U.S. workforce for their temporary or other seasonal jobs. According to a recent study published jointly by the Center for Global Development and the Partnership for a New American Economy, "International Harvest: A Case Study of How Foreign Workers Help American     Farmers     Grow     Crops     –     and     the     Economy,"     at     17 http://www.cgdev.org/publication/international-harvest-case-study-how-foreign-workers-

FPDOCS 30018604.1

help-american-farms-grow-crops (May 2013), every three H-2A workers create one (1) new job for a U.S. worker. Others estimate that even more U.S. jobs are created because of the work performed by H-2A temporary foreign workers. Thus, ILMC's client employers as well as their American employees and the American economy generally suffered irreparable, immediate, continuing and growing losses to their own reputations and abilities to serve their respective customers and clients, as well as irreparable financial hardship. Receiving authorization to hire temporary foreign workers through a certification issued by DOL the day before workers are actually needed is almost tantamount to a denial of certification. For others, their beginning date of need passed, and they still had no certification. ILMC did all it could, as quickly as it could, to minimize additional irreparable losses and irretrievable business opportunities. Upon learning on March 7, 2014, that DOL was demanding that its clients complete and return a new and unexpected—never previously seen--form such as Exhibit 33 to confirm ILMC's status as their agent and the content of their job orders, ILMC immediately began contacting all clients by telephone to urge them to complete and return that form to DOL as quickly as possible to avoid certification delay. For those clients that have email addresses, ILMC also sent out an email the same day it learned from a client of the new form being used by Defendants. Notably, ILMC did not learn about this extraordinary process and new form from DOL. DOL had sent out the form directly to ILMC clients, not only bypassing ILMC but not even informing ILMC, the duly credentialed agent, of what DOL was asking of its clients. A copy of this March 7 email to clients that have

FPDOCS 30018604.1

email addresses is attached as Exhibit 34. ILMC therefore asks that in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 551(13) and 706, the Secretary and DOL be required immediately, consistently in the future, and in good faith 1) to complete agency actions by the mandatory timelines, as set out in statute and regulation, that have been unlawfully withheld or unreasonably delayed, and 2) to communicate directly with ILMC with respect to all applications for certifications to employ H-2A and H-2B workers filed by ILMC on behalf of its clients without by-passing ILMC and instead contacting only ILMC's clients or contacting its clients before contacting ILMC. Further, ILMC asks that a *writ of mandamus* be issued pursuant to 28 U.S.C. § 1361 to compel the Secretary, as an officer or employee of the United States or an agency thereof, to perform all duties owed to ILMC. Under applicable law, ILMC has a clear right to the relief being sought to require the Secretary to perform these duties in accordance with specific statutory and regulatory deadlines in accordance with existing statutory and regulatory processes and requirements. The duty of the Secretary to perform these duties is clear, and there is no other adequate remedy available to ILMC. Thus the *writ of mandamus* that ILMC seeks should be issued in accordance with 28 U.S.C. § 1361 and the law of this Circuit as discussed in *First Federal Savings and Loan Ass'n v. Baker*, 860 F.2d 135 (4th Cir. 1988).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States, including the

FPDOCS 30018604.1

Administrative Procedure Act, the law that provides for judicial review of "agency action" as defined in 5 U.S.C. § 515(13) under the requirements of that law in its Sections 553 and 701 *et seq.*, and the issuance of a *writ of mandamus* pursuant to 28 U.S.C. § 1361. Applicable statutes under which the rights of ILMC have been violated are set forth at 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and (b), 1103(a), 1184(c) and 1188.

5.      Venue is proper in the Middle District of North Carolina. Plaintiff ILMC is incorporated in the State of North Carolina with its principal place of business located in Vass, North Carolina, within the Middle District of North Carolina. A substantial part of the events and omissions giving rise to the claim occur within this District. The Defendant Secretary of Labor is an officer of an agency of the United States and is sued in his official capacity, and DOL is an official agency of the United States. 28 U.S.C. §§ 1391(b), (c)(2), and (e).

6.      ILMC assists more than 200 employers across the United States in connection with navigating the complex H-2A and H-2B paperwork processes. With respect to H-2A clients who are legally permitted to use services of agricultural workers from another country only for a maximum of ten (10) months and who must annually complete a series of steps on time and in compliance with applicable statutory and regulatory rules pertaining to execution of documents, submission of reports, and other requirements, ILMC works with its clients to facilitate the availability of a reliable workforce through the use of the H-2 Program either through employment of able, willing and qualified U.S. workers who are available at the time and place needed for the

FPDOCS 30018604.1

job or through the employment of temporary foreign workers. ILMC provides technical assistance to employer clients in connection with H-2A requirements and other laws that apply only to or that have special application with respect to agricultural employers; it acts as a liaison between its clients and government agencies, including DOL; it provides representation of the interests of agricultural employers in connection with regulatory affairs and initiates and supports legislation to support the needs of agriculture employers.

7.     In connection with the H-2B Program, ILMC assists non-agricultural H-2B employers, as that term is currently defined by DOL, in the process to obtain a legal and adequate labor force that includes U.S. workers, to the extent they are able and willing to perform such jobs, as well as temporary foreign workers to perform work in other than agricultural jobs.

**STATUTORY FRAMEWORK FOR**
**THE H-2A PROGRAM SHOWS DEADLINES FOR DOL ACTION**
**<u>ARE MANDATORY DEADLINES DOL MUST MEET</u>**

8.     The statutory authorization for the H-2A Program as a guest worker program that is separate and specifically for agricultural workers was created as part of the Immigration Reform and Control Act of 1986 ("IRCA"). Pub. L 99-603, Title III, § 301(c), 100 Stat. 3411; renumbered, § 218 and amended, Oct. 24, 1988, Pub. L. 100-525, §§ 2(l)(2), (3), 102 Stat. 2612.

FPDOCS 30018604.1

9. As originally enacted, the detailed requirements that apply to both employers and DOL were codified at 8 U.S.C. § 1186. These requirements are currently codified at 8 U.S.C. § 1188.

10. As originally enacted, under the H-2A Program, the Secretary of Labor could require a farmer applicant to file his application for certification to obtain temporary foreign workers if adequate, able, willing and qualified U.S. workers were not available sixty (60) days before the employer's first date of need for such labor or services. As amended in 1999, the Secretary now may not require that a prospective H-2A employer application be filed "more than 45 days before the first date the employer requires the labor or services of the H-2A worker. 8 U.S.C. § 1188(c)(1).

11. Once an application for temporary labor certification, if sufficient U.S. workers are not available, has been filed, the employer "shall be notified in writing within seven days of the date of filing if the application does not meet the standards … for approval." 8 U.S.C. § 1188(c)(2)(A). The seven-day deadline is mandatory, not aspirational. The regulations provide no basis upon which the seven (7) day deadline may be extended. Moreover, "[i]f the application does not meet such standards, the [written] notice shall provide the reasons therefor and the Secretary shall provide an opportunity for the prompt resubmission of a modified application."

12. Because of difficulties of projecting weather, market and other crop conditions, agricultural employers found making plans and submitting application documents, as originally required by IRCA and the Secretary, at least sixty (60) days

before their date of need for workers' labor or services required them to make irrevocable decisions too far in advance to make prudent business decisions. Therefore, employers urged they required a reduction in the time before their date of need that the Secretary could require them to file H-2A application documents offering promises of employment, with specified wage rates and other terms and conditions of employment as required by the Secretary. In 1999, Congress reduced the time in advance of the farmer's projected dated of need the Secretary could require such application submission from sixty (60) days to forty-five (45) days as now provided in 8 U.S.C. §1188(c)(1).

13.     As originally promulgated as part of IRCA, the Secretary of Labor was allowed to wait until twenty (20) days before an employer's date of need for labor or services to issue a certification that the employer had met the applicable criteria for employment of temporary and foreign workers, to the extent U.S. workers were not available. Receiving a certification only twenty (20) days before workers were needed on the farm did not allow sufficient time to complete all other visa application procedures. Since 1999, processes by which employers may apply to the Department of Homeland Security's Citizenship and Immigration Services "U.S.C.I.S.") for authorization for the issuance of visas and by which individual prospective workers may apply for the issuance of a visa to them personally have become more time-consuming and complex, even requiring individual prospective workers to complete their DS-160 forms via computer or to make arrangements for someone to make the filing on their behalf. As amended in 1999, under statutory law,

FPDOCS 30018604.1

> The Secretary of Labor shall make, not later than 30 days before the
> date such labor or services are first required to be performed, the
> certification described in subsection (a)(1) of this section ….

8 U.S.C. § 1188(c)(3)(A).

14.     Under the Immigration Reform and Control Act provision creating the H-2A Program and the requirements, as amended, that are part of 8 U.S.C. § 1188, the Secretary of Labor does not have the unilateral right to issue regulations or impose other H-2A requirements, that in effect are "regulations" because they create mandatory duties and obligations, in connection with the H-2A Program. Although not officially codified in the U.S.C.A, the following statutory requirement, as amended and codified in 8 U.S.C. § 1103, continues to govern the H-2A Program:

> The Attorney General, in consultation with the Secretary of Labor
> and the Secretary of Agriculture, *shall approve all regulations* to be
> issued implementing sections 101(a)(15)(H)(ii)(a) and 218 of the
> Immigration and Nationality Act [8 U.S.C. 1101(a)(15)(H)(ii)(a),
> 1188].

(Emphasis supplied.) Section 301(e) of Pub. L. 99-603, as amended, Pub. L. 100-525, § 2(l)(4), Oct. 24, 1988, 102 Stat. 2612, reprinted in 8 U.S.C.A. § 1188, note at p. 166 (2005).

FPDOCS 30018604.1

15.     Under 8 U.S.C. § 1103(a), certain responsibilities of the Attorney General of the United States have now been transferred to the Secretary of the Department of Homeland Security.

16.     When the proposed H-2A provisions of the Immigration and Control Act were presented to the Congress for consideration, the bill was presented just as it had been negotiated among interested groups.  As presented to Congress, the section that was to become the 8 U.S.C. § 1188(c) section in which responsibility for meeting deadlines in issue in this case was placed on the Secretary of Labor was headed with the caption "SPECIAL RULES FOR CONSIDERATION OF APPLICATIONS."  (Emphasis in original.)   The subsection now codified at 8 U.S.C. § 1188(c)(1) that specifies the maximum length of time before the date of need that the Secretary of Labor may require the filing of an employer's application for H-2A certification was captioned "DEADLINE FOR FILING APPLICATIONS."  (Emphasis in original.)  The text now at 8 U.S.C. § 1188(c)(2) that specifies that the Secretary must notify the employer in writing within seven days of the date of filing the application if the application for certification does not meet the applicable standards for approval was captioned "NOTICE WITHIN SEVEN DAYS OF DEFICIENCIES."  (Emphasis in original.)  The subsection that now provides that the Secretary "shall make, not later than 30 days before the date such labor or services are first required to be performed" carried the caption "ISSUANCE OF CERTIFICATION."    (Emphasis in original.)    These statutory instructions to the Secretary, including the requirements of 8 U.S.C. § 1188(c) as stated therein together

with the changes to deadlines in 1999 demonstrate that H-2A time deadlines on the Secretary of Labor that are contained in the law are mandatory obligations on the Secretary and the Department of Labor. Accordingly, these deadlines may not be varied or excused even by rulemaking.

17. In this case, there have been no amendments to the statute and not even any purported regulatory changes (even though the Secretary may not dispense with statutory requirements by regulation) that would authorize, or purport to authorize, the Secretary to deviate from the deadlines mandated in 8 U.S.C. §§ 1188(c)(2) and (3).

18. The DOL regulations currently in effect that govern the labor certification process for temporary agricultural employment of H-2A workers were promulgated on February 12, 2010, at 75 Fed. Reg. 6959 *et seq.* These February 12, 2010, H-2A regulations are codified in the 2013 edition of the Code of Federal Regulations. This Court and the U.S. Court of Appeals for the Fourth Circuit had previously invalidated and held unlawful action by the DOL to suspend H-2A rules as provided for in 73 Fed. Reg. 77, 110 *et seq.* (Dec. 18, 2008) ("the 2008 Rules") and to revert to H-2A rules referenced as the "1987 Regulations" that had been in effect until the 2008 Rules became effective on January 17, 2009. The history of this effort by DOL that resulted in a finding that in doing so DOL and the Secretary violated the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 553 and 701 *et seq.* is set forth in *North Carolina Growers' Ass'n, Inc. v. Solis*, 644 F.Supp. 2d 664 (M.D. N.C. 2009), *aff'd sub nom. North Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3rd 755 (4th Cir. 2012).

19.     Under the current 2010 H-2A Regulation promulgated by the Secretary, a proposed H-2A employer must first submit an H-2A job order or application on an ETA Form 790 to the State Workforce Agency ("SWA") serving the area of intended employment at least 60 days before its date of need before it may submit an Application to DOL.  (A copy of this form is attached as Exhibit 35.)  20 CFR .655.121(a)(1) (2013). This requirement was imposed notwithstanding the statutory amendment to 8 U.S.C. § 1188(c)(1) that provides the Secretary may not require the filing of an application more than 45 days before the date of need.

20.     Requirements at 20 CFR § 655.130 (2013) provide additional filing requirements and obligations on proposed H-2A agricultural employers and their agents who assist them in making the required filings and in dealing with the Secretary and DOL.  There is no provision allowing for discretion to add new requirements on an *ad hoc* basis and certainly no basis for adding requirements without approval by the Secretary of Homeland Security and the Secretary of the Department of Agriculture. Applications as provided for in 20 CFR § 655.130 must be timely filed at the proper National Processing Center ("NPC") that has been designated by DOL's Office of Foreign Labor Certification ("OFLC") Administrator.   After following the processes described in 20 CFR § 655.121, "a completed *Application for Temporary Employment Certification* must be filed [with DOL/NPC] no less than forty-five (45) calendar days before the employer's date of need."  *See* Exhibits 29, 30 and 35 that must be filed.

21.     The *Application for Temporary Employment Certification* "must bear the

original signature of the employer (and that of the employer's authorized attorney or agent if the employer is represented by an attorney or agent)." 20 CFR § 655.130(d). See Exhibit 29 (Item I) and Exhibit 30 (Items A (for the agent) and B (for the employer)).

22.    The 2010 H-2A Regulations provide that Information received in the course of processing Applications for Temporary Employment Certification and program integrity measures such as audits may be forwarded from OFLC to the Wage and Hour Division (WHD) for enforcement purposes. 20 CFR § 655.130(e).

23.    The provisions of 20 CFR §§ 655.130(d) and 655.103(b) ("agent" definition) (2013) expressly permit the filing of an *Application for Temporary Employment Certification* by an agent of an employer. Any information that is obtained in the course of processing such an application and program integrity matters may be *forwarded to* the Wage and Hour Division ("WHD"). 20 CFR § 655.130(e). Investigations and audits by OFLC are not authorized as part of the H-2A *Application* filing or review process under 20 CFR § 655.130(e), and they are not otherwise authorized in the 20 CFR 655 Subpart B regulations that govern to the H-2A Program.

24.    Documents submitted by employers and their agents, including ILMC, must be submitted under oath or other affirmation under penalty of perjury. In all pending H-2A and H-2B cases of ILMC clients before the OFLC, all Applications were submitted and are filed under oath or other affirmation under penalty of perjury. *See* Exhibits 29, 30, 31 and 32. Section 655.130(e) allows any question or concern as to the underlying accuracy of an *Application* or the actual practices of employers and agents to

be investigated by WHD, upon forwarding information regarding such concerns by OFLC to WHD. OFLC is not authorized to stop or delay the processing of an *Application* to conduct such an investigation, and indeed the OFLC is not authorized to conduct such an investigation at all.

25. In recognition of the stringent time restraints within which all work to complete review and certification authorization by the mandatory thirty (30) days before date of need deadline set forth in the H-2A statute, the 2010 Regulations require that any notice or request being sent by a certifying officer in the course of the review of an H-2A application be sent to assure next-day delivery. 20 CFR § 655.140(b) (2013). The regulations allow a reviewing certification officer to make one such request. If in review the certifying officer determines that an *Application for Temporary Employment Certification* or job order is incomplete, contains errors or inaccuracies or does not meet the requirements set forth in the H-2A regulation requirements at 29 CFR Subpart 655, then the certifying officer must notify the employer within seven (7) calendar days of the certifying officer's receipt of the *Application for Temporary Employment Certification*. 20 CFR § 655.141(a) (2013). The notice submitted to the employer and the employer's agent by the certifying officer must state the reasons why the application or job order fails to meet the criteria for acceptance and offer the employer the opportunity to submit a modified application or job order within five (5) business days from the date of receipt of the notice from the certifying officer "stating the modification that is needed" in order for the certifying officer "to issue the Notice of Acceptance" of the application. 20 CFR

- 19 -

§ 655.141(b)(1) and (2) (2013). If the employer makes the modifications required by the certifying officer, the original deadline for issuance of the certification no later than thirty (30) calendar days before the date of need will be maintained; otherwise, the employer must endure what is described as an expedited administrative review or a de novo administrative hearing before a DOL Administrative Law Judge. 20 CFR § 655.141(b)(3) (2013).

26.    Under the H-2A *Application* regulations, if the certifying officer determines that the employer's *Application for Employment Certification* and job order are complete and meet the requirements set forth in 20 CFR § 655, Subpart B when it is submitted to OFLC, the certifying officer must notify the employer of such acceptance "within seven (7) calendar days of the certifying officer's receipt of the *Application for Temporary Employment Certification*."    20 CFR § 655.143(a) (2013).    This notice authorizes the conditional access of the employer's job order to the interstate recruitment system whereby prospective U.S. workers can learn of the job opportunity and express their interest in it. Assuming the job order and *Application* are acceptable as containing the required provisions, the certifying officer must grant full or partial certification (deducting from the requested number to be certified, if U.S. workers are not located, the number of U.S. workers who have been located during the recruitment process) no fewer than thirty (30) calendar days before the date of need. 8 U.S.C. § 1188(c)(3).    This deadline allows the employer to make a petition to the Department of Homeland Security through its United States Citizenship and Immigration Services ("USCIS") to authorize

FPDOCS 30018604.1

the issuance of visas by a U.S. Consular office or embassy to enable H-2A workers to enter the country so that the workers can be in place to begin work on the date of need.

27.     Title 20 CFR § 655.180 (2013) authorizes the DOL's certifying officer to "conduct audits of applications *for which certifications have been granted*." (Emphasis added.) The regulation does not authorize any audits or investigations by the CO during the critically time-sensitive certification Application process or indeed before certification has been granted.

**DOL'S UNLAWFUL ACTIONS WITH RESPECT TO
ILMC AND ITS CLIENTS**

28.     Upon information and belief, the Defendants have engaged in deliberate, knowing, and continuing violations of the foregoing applicable statutory law and DOL rules, resulting in irreparable harm to ILMC and its clients, as will be set forth in more detail below.   On January 31, 2014, ILMC was charged in an indictment alleging a number of violations of federal immigration laws.   *United States v. ILMC*, 1:14-CR-39 (M.D. N.C. 2014).   The company entered a plea of not guilty to those charges, and the trial of the case has been set for September of this year.   *Id.* Docket Nos. 7, 21.

29.     The Secretary's subordinate officials and employees of DOL disregarded application filings that were made, not even acknowledging receipt of applications as required.

30.     The Secretary's subordinate officials and employees of DOL repeatedly failed to comply with multiple mandatory statutory deadlines provided for in the H-2A Program as set forth at 8 U.S.C. § 1188 as well as with the regulatory deadlines

FPDOCS 30018604.1

applicable to the H-2A and H-2B Programs that were established by DOL to govern the fulfillment of its obligations with respect to the rights of employers and their agents in connection with the H-2A and H-2B Programs. The H-2A statutory deadlines include a requirement that DOL provide notice "in writing within seven days of the date of filing" if the application does not meet DOL's "standards … for approval." 8 U.S.C. § 1188(c)(2)(A). By statute, the notice that must be provided within seven (7) days "shall include the reasons" the application does not meet such standards. 8 U.S.C. § 1188(c)(2)(B).

31. DOL and the Secretary bypassed ILMC, the duly authorized agent of record on behalf of its employer clients, by sending notices and demands for additional information and requests for verification of the status of ILMC and the content of employers' job orders only to the employers, contrary to applicable regulations, authorizations to DOL, and long-established operating procedures relied on by ILMC and by employers that had hired ILMC to assist them in dealing with DOL and its processes. Not only is the lawful role of an "agent" expressly recognized in the H-2A regulations, the role of agents is reflected in the development and promulgation of the H-2A regulations. *See, e.g.,* 75 Fed. Reg. 6917, 6919, 6920, 6960, 6967, 6968 (Feb. 12, 2010).

32. Before the Defendants' change of procedures and commitments memorialized in DE 34 and DE 34-1, filed April 8, 2014, DOL and the Secretary issued notices directly to ILMC's clients (bypassing ILMC) purporting to require ILMC's employer clients to sign multiple and duplicative documents to reaffirm their agency

FPDOCS 30018604.1

relationship with ILMC and the content of their applications in violation of applicable DOL regulations. One such questionnaire reaffirmation form is attached as Exhibit 33. It is captioned "ENCLOSURE FOR UNACCEPTABLE APPLICATIONS." (Emphasis in original).

33. In the handful of certifications received for H-2A job orders filed by ILMC by March 19, 2014, that by statutory law must be issued "not later than 30 days before the date such labor or services are first required to be performed" according to the employer's needs, those certifications were issued in many cases nearly 30 days *past* the mandatory deadline for making such certifications.

34. In Calendar Year 2014, ILMC, as the agent of its clients, submitted timely applications for H-2A workers to the DOL. In numerous instances, the DOL failed to issue Notices of Deficiency within the seven (7)-day deadline provided for in 8 U.S.C. Section 1188(c)(2)(A). *See* Exhibit 1. As of March 19, 2014, Cotton Hope, due to have received certification on March 1, had not received its certification, then nearly three (3) weeks late. Based on experience with the processes that must be completed through the U.S.C.I.S. (*see* U.S.C.I.S. Form I-129, Exhibit 38) and the individual worker DS-160 applications that must be filed with the United States Department of State Consular Office by computer, by or on behalf of each proposed worker who must schedule and must be personally interviewed in the foreign country before issuance of a visa for that worker, there was no factual basis to hope that Cotton Hope's workers could be on the job on time. Indeed, the processing time between issuance of a visa and the availability

FPDOCS 30018604.1

of a worker to be on the job at work is the reason that the farmers urged Congress to change the law to require DOL certification at least thirty (30) days before the date of need so that post DOL certification processes can be completed, and the post-certification processes now in effect are much more complex and time-consuming to complete than were those in effect in 1999.

35.    In yet other instances, the DOL failed to acknowledge receipt of the applications at all and, upon information and belief, took no action whatsoever on the pending applications as of the date this suit was filed on March 19, 2014.

36.    Exhibit 1, pages 1 through 9, shows the status of ILMC's pending applications as of Friday, March 14 at the end of the day.  Exhibit 1 shows some applications for which certifications were finally belatedly received. Exhibit 1  shows the name of affected employer clients of ILMC, the respective employer's Date of Need ("DON"), the date the application for certification was received by the DOL's CNPC, the date of issuance of any Notice of Deficiency ("NOD") by a certifying officer at the CNPC, the date the employer replied to the claimed NOD, the date a Notice of Acceptance ("NOA") by the certifying officer was due to have been issued (the "Accept Due" column), the date any NOA was received by the employer (the "Accept Rev'd" column"), the date the employer's Recruitment Report ("RR") concerning results of efforts to recruit Americans for the job was submitted to DOL/CNCP, the date the certification of the job order was due (listed as "Cert Due"), the date certification, if issued, was received (listed as 'Cert Rev'd"), the date of receipt by the employer of any

FPDOCS 30018604.1

follow up reconfirmation questionnaire, listed under the column "confirm again?" in which the employer was required to reconfirm that ILMC is the employer's agent and the accuracy of information in the job order, the number of workers for whom authorization was requested, and "notes" regarding the application. Exhibit 1 demonstrates that the DOL repeatedly missed mandatory deadlines and missed them by substantial margins that cannot be accounted for by weather or other benign delays.

37. As demonstrated in Exhibit 1, the DOL has acted or omitted to act in the following unlawful or unauthorized ways:

(a) As of 5:00 p.m., Friday, March 14, 2014, ILMC had filed 77 H-2A cases on the list that were processed outside of the statutory time limit, including 10 cases with 0 action.

(b) As of the same time and date, ILMC had 48 cases in which the certifications were overdue or were certified outside of the statutory deadline within which certifications were due to have been issued.

(c) As of the same time and date, ILMC had 63 cases for which Notices of Acceptance were overdue or in which Notices of Deficiency were provided outside the deadline required by statute.

(d) As of the same time and date, there were 3 H-2B cases that were being or were processed outside of regulatory deadlines applicable to the H-2B Program.

FPDOCS 30018604.1

(e)     As of the same time and date, the DOL had failed to respond to or issue acceptances to 25 employers who had received and had timely responded to the Exhibit 33 questionnaire forms, to certify yet again that ILMC was in fact their agent, that they were in fact requesting the workers, and that they would comply with their obligations under the H-2A program.

38.     ILMC and individual employers sought administrative review of DOL's unlawful actions through the DOL's Office of Administrative Law Judges ("OALJ") in an attempt obtain relief and to exhaust their administrative remedies before resorting to this action, as reflected in the Order entered March 12, 2014, by Associate Chief Administrative Law Judge, William S. Colwell.  A copy of Judge Colwell's March 12 Order is attached as Exhibit 41.  Cases filed by ILMC clients before Judge Colwell at that time were consolidated in a case styled In the Matters of *J. E. Cooley Farms*, *et al.*, ALJ No. 2014-TLC-00054.  Judge Colwell questioned whether he had authority to enter any Order, given that there had been no official denial of certification although he found there may have been a "constructive" denial.  Accordingly, there is no effective administrative remedy available to ILMC or its client employers through the administrative processes of the United States Department of Labor.  For employers that needed workers in early March (already passed) when this suit was filed, their crop losses were substantial and irrevocable, causing them irreparable financial hardship, and damage to their business reputations as well as to the business reputation of ILMC, to which they delegated the task of representing them before the DOL to enable them to obtain legal agricultural

FPDOCS 30018604.1

workers. ILMC likewise has suffered irreparable financial hardship because of Defendants' actions and failures to act. Neither the employers nor ILMC has any adequate remedy at law other than the intervention of this Court to require DOL to perform immediately the actions it is compelled to perform, using the same standards lawfully and evenly applied with respect to other employers and other agents and to communicate with ILMC in matters affecting its clients, without bypassing ILMC.

## DOL'S UNLAWFUL ACTIONS WITH RESPECT TO ILMC AND ITS CLIENTS UNDER THE H-2B PROGRAM

39.     ILMC incorporates by reference the allegations of Paragraphs 1-38 of the Complaint as if fully set forth herein.

40.     Regulations issued by DOL to govern the H-2B Program in 2012 never became effective. These enjoined and never effective H-2B regulations are, however, the H-2B regulations that were codified in the Code of Federal Regulations, 20 CFR §§ 655.1-655.81 at pp. 305-344, that is dated April 1, 2013. These regulations issued in 2012 were enjoined by Court Order in *Bayou Landscape Services v. Solis*, C.A. No. 3:12-cv-00183 (N.D. Fla. Apr. 26, 2012). Moreover, DOL published a Notice of the Issuance of a preliminary injunction order "enjoining [DOL] from implementing and enforcing" the H-2B regulations that it had published at 77 Fed. Reg. 10038 *et seq.* (Feb. 21, 2012) at 77 Fed. Reg. 28764-65 (May 16, 2012). "[T]he judgment of the district court that the preliminary injunction should issue" was affirmed. *Bayou Lawn & Landscape Svcs. v. Secretary of Labor*, 713 F.3d. 1080 (11th Cir. 2013).

FPDOCS 30018604.1

41.     The regulations issued by DOL with respect to the H-2B (non-agricultural) labor certification application and issuance process that are in issue in this case are set forth at 20 CFR § 655 Subpart A, 655.1-655.81 (2012), which contains both the H-2B regulations published at 73 Fed. Reg. 78052 *et seq.* (Dec. 19, 2008) ("the 2008 H-2B regulations" that are in effect and the H-2B regulations later published at 77 Fed. Reg. 10148 (Feb. 21, 2012) that were to become effective April 23, 2012 ("the 2012 Regulations") but that DOL was enjoined "from implementing and enforcing . . . " under *Bayou* as discussed by DOL at 77 Fed. Reg. 28765 (May 16, 2012).

42.     Having promulgated and announced that it will follow the 2008 H-2B regulations, the Secretary and DOL must comply with these deadline requirements of these 2008 H-2B regulations in connection with employers' H-2B certification applications.  There is, however, serious legal question as to the authority of the Secretary to have promulgated any such regulations to govern the H-2B program.  Under 8 U.S.C. § 1184(c)(1), as amended by 8 U.S.C. § 1103 through which certain powers were transferred from the Attorney General to the Secretary of the Department of Homeland Security, "[t]he question of importing any alien as a nonimmigrant under [the H-2B Program] in any specific case or specific cases shall be determined by [the Secretary of Homeland Security] "after consultation with appropriate agencies of the Government, upon petition of the importing employer."  The statute says such petition for authorization to issue a visa shall be in such form and contain such information as the Attorney General, now pursuant to 8 U.S.C. § 1103, the Secretary of the Department of Homeland

FPDOCS 30018604.1

Security, "shall prescribe." The U.S. Court of Appeals for the Eleventh Circuit has ruled that this provision gives no statutory authority to the Secretary of Labor to issue rules with respect to H-2B Program in *Bayou Lawn & Landscape Services v. Department of Labor*, 713 F.3d 1080 (11th Cir. 2013) in the decision upholding the issuance of the preliminary injunction forbidding DOL to implement or enforce the 2012 H-2B regulations.

43.    Acknowledging the decision as "a difficult one" in light of the decision by the Court of Appeals for the Eleventh Circuit in the *Bayou* case, in *Louisiana Forestry Ass'n Inc. v. Secretary of Labor*, 745 F.3d 653, 675 n. 17 (3rd Cir. Feb. 5, 2014), the U.S. Court of Appeals for the Third Circuit found that the Secretary of Labor may exercise such authority. As discussed previously by Notice issued at 77 Fed. Reg. 28764-65 (May 16, 2012), DOL informed affected persons that the regulations that would be used in connection with the processing of H-2B petitions are those discussed and published at 73 Fed. Reg. 78020-78067 (Dec. 19, 2008) ("the 2008 H-2B Rule"). Subsequently, a new H-2B interim final "wage" rule was issued April 24, 2013, at 78 Fed. Reg. 24074 (April 24, 2013). This new wage-setting rule replaces the wage-setting process for jobs for which wages under the 2008 H-2B Rule were set based on DOL's Bureau of Labor Statistics, Occupational Employment Statistics Survey ("OES Survey") data. The only material change affecting current H-2B applications from the 2008 H-2B Program regulations in effect is the wage-setting methodology. Even though there is serious legal question as to whether DOL has power to regulate and demand any attestations,

document filings and the like, ILMC and its clients fully complied with DOL's rules pertaining to the H-2B application process. Like H-2A agricultural employers, H-2B dependent employer users of lawfully present, authorized temporary foreign workers in seafood processing operations, restaurants, landscaping, resorts and many other enterprises that depend on the availability of seasonal and temporary workers rely on DOL's prompt and consistent compliance with its own voluntarily assumed deadlines for action on their applications that DOL adopted in a purported notice and comment APA rule making. Under the currently effective H-2B regulations published at 20 CFR § 655.23 (2012), pages 506-507, as earlier published in the above-referenced 73 Fed. Reg. 78052-78067 (Dec. 19, 2008), the certifying officer is allowed to issue a Request for Information ("RFI") "within 7 calendar days of the receipt of the application [of an employer] and send it by means normally assuring next-day delivery." 20 CFR § 655.23(c)(1) (2012), page 506, 73 Fed. Reg. at 78060. As in the case of a request for modification of an application in the H-2A program, the "RFI [issued in connection with an H-2B application] must specify the reason(s) why the application is not sufficient to grant temporary labor certification, citing the relevant regulatory standard(s) and/or special procedure(s)" applicable to the application. 20 CFR § 655.23(c)(2) (2012), page 506, 73 Fed. Reg. at 78060.

44.     As in the case of the H-2A processes, there are deadlines within which the certifying officer must act on an application.

FPDOCS 30018604.1

> The CO will issue the Final Determination or the additional RFI within 7 business days of receipt of the employer's response, or within 60 days of the employer's date of need, whichever is later.

20 CFR § 655.23(c)(3) (2012), page 506; 73 Fed. Reg. at 78060.

45.     As in the case of the H-2A Program, processes may be undertaken on behalf of H-2B prospective employers by agents. The H-2B term "agent" is defined as "a legal entity or person authorized to act on behalf of the employer for temporary non-agricultural labor certification purposes that is not itself as an employer as defined in this subpart." 20 CFR § 655.4(b) (definition of "agent") (2012), page 476; 73 Fed. Reg. at 78053. As in the case of the H-2A regulations, the agents participated in the development of the H-2B rules and their roles were recognized in the process and in the adopted regulations. *See, e.g.,* 73 Fed. Reg. 78023, 78025, 78035, 78036, 78053, 78058 (Dec. 19, 2008).

46.     For the reasons stated in Paragraph 32 above, ILMC does not currently request an injunction against the imposition of a requirement by Defendants that ILMC's clients respond to a Questionnaire such as the one attached as Exhibit 33 or a determination that such action was unlawful.

47.     Actions by Defendants and their failures to act within the applicable regulatory time limits governing their processing of H-2B applications caused irreparable financial and other harm to the H-2B employers and irreparable harm to their business reputations, as well as to the business reputation of ILMC, to which these employers

FPDOCS 30018604.1

delegated responsibility for obtaining legal H-2B workers. ILMC likewise has suffered irreparable financial hardship because of Defendants' actions and failures to act.

48. As shown by Exhibit 1, page 9, George's Market & Nursery needed five (5) temporary or seasonal workers to operate its business, and it is an ILMC client that suffered irreparable injury because of DOL's failure to process its H-2B Application under the promised time frame and in accordance with the established processes. Even though the Secretary of Labor is not required by statute to obtain approval of proposed regulations by the Secretary of Homeland Security and the Secretary of Agriculture, as is the case with respect to regulations issued under the H-2A program, assuming that the Secretary of Labor has any power at all to issue any legislative rules under the H-2B program, the Secretary must follow the processes it has promised employer applicants it will follow via the 2008 H-2B regulations it adopted. It may not make up ad hoc rules and requirements or extend deadlines it has said it will meet. Under the H-2B Program, there is a statutory 66,000 numerical limit (a "cap") on the total number of aliens who may be issued an H-2B visa during a fiscal year. Currently, the H-2B cap is 33,000 workers, allocated in the first half of the year (beginning October 1 through March 31). Once 33,000 visas are issued between October 1 and the following March 31, no additional H-2B visas may be issued during this time frame. The George's Market & Nursery application for H-2B workers was submitted by ILMC as agent and received by the Chicago National Processing Center on February 11, 2014. DOL should have submitted any Request for Information (RFI) *no later than* seven (7) calendar days later,

FPDOCS 30018604.1

by February 18, 2014, according to DOL's own time limit. Notwithstanding this time limit, DOL submitted an RFI directly to George's Market & Nursery on March 10, 2014, almost a month after the due date for any RFI to be submitted. The RFI consisted solely of a questionnaire request for reconfirmation of the agent status of ILMC to act on its behalf and certain information concerning the job that had already been submitted under oath or affirmation. This is the same questionnaire request for reconfirmation form as Exhibit 33 that was submitted to numerous ILMC clients, bypassing ILMC as the agent. Even though George's Market had immediately responded to this RFI/questionnaire request for reconfirmation on the same day it received this request, George's Market was not certified until March 13. On March 14, 2014, the certification was received, but the statutory cap on the number of visas that may be issued until March 31 was reached the same day. On information and belief, 1) if DOL had not submitted any such improper and unauthorized RFI or 2) even if DOL had submitted an improper RFI to George's Market by the date any RFI was due to have been submitted, George's Market & Nursery's could have made its application for visa issuance to the U.S.C.I.S. in time so that the statutory cap on visas would not have been reached before the U.S.C.I.S. would have processed its application, and it would have been authorized to hire a legal and temporary workforce to operate its business. As it is, George's Market & Nursery was required to start the whole H-2B advertising and application process all over again to get in line for five (5) of the 33,000 visas that can be issued between April 1 and September

FPDOCS 30018604.1

30, if it will not have missed so much of its season that it is not even worth the time and expense of another application process.

## PRAYER FOR RELIEF

Plaintiff ILMC hereby prays the Court for the following relief, as well as other appropriate relief, in addition to continuation of the preliminary injunction issued against both Defendants and the *writ of mandamus* issued against the Secretary of Labor by this Court on April 25, 2014, in a Memorandum Opinion and Order issued as DE 38:

1.      ILMC asks for a the issuance of a permanent injunction that requires the Defendants, in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 551(13) and 706, in good faith  to complete actions by the mandatory timelines set out in the applicable statute and regulations, including:

   a.      The issuance to ILMC of any appropriate Notice of Deficiency or Notice of Acceptance as to H-2A applications filed by ILMC on behalf of its H-2A clients within seven (7) days of the receipt by Defendants of such applications in accordance with 8 U.S.C. § 1188(c)(2) and 20 C.F.R. §655.143(a)(as to acceptances) and §655.141(a)(as to deficiencies);

   b.      The issuance to ILMC of any appropriate Request for Further Information (RFI) within seven (7) calendar days of the receipt by the Defendants of H-2B applications filed by ILMC on behalf of its H-2B clients, as required by the 2008 H-2B Regulations now in effect,

- 34 -

promulgated as 20 C.F.R. §655.23(c) at 73 Fed. Reg. 78060 (Dec. 19, 2008) and 77 Fed. Reg. 28764-65 (May 16, 2012)**;**

c.      In connection with H-2A applications filed on behalf of ILMC's H-2A clients to make not later than 30 days before such labor or services are first required to be performed, the certification described in subsection 8 U.S.C. §1188(a)(1) if the employer has complied with the criteria for certification (including criteria for the recruitment of eligible individuals as lawfully prescribed by the Secretary of Labor) as set forth in 8 U.S.C. §1188(c)( 3)**;**

d.      In connection with H-2B applications filed on behalf of ILMC's H-2B clients to issue the Final Determination of certification as to applications in which applicable lawful criteria have been met by such H-2B clients within 7 business days of receipt of the employer's response to a permissibly issued RFI, or within 60 days of the employer's date of need, whichever is later, as required by the 2008 H-2B Regulations now in effect, promulgated as 20 C.F.R. §655.23(c)(3) at 73 Fed. Reg. 78060 (Dec. 19, 2008) and 77 Fed. Reg. 28764-65 (May 16, 2012), and in any case where applicable requirements have been met, no later than a date sufficiently in advance of the employer's date of need to permit the employer, as a practical matter, to obtain the Congressionally intended benefit of an H-2B certification to permit the employer to obtain the services of temporary

foreign workers through the use of the H-2B Program authorized at 8 U.S.C. § 1101(a)(15)(H)(ii)(b) at the time and place such workers are needed by the employer;

2.      ILMC asks for the issuance of a *writ of mandamus* pursuant to 28 U.S.C. § 1361 to compel the Secretary, as an officer or employee of the United States or an agency thereof, to perform all duties owed to ILMC and the clients of ILMC, including the completed processing of all applications in accordance with the strict time deadlines provided in statute and regulation in the case of H-2A applications and regulation in the case of H-2B applications and to issue certifications in accordance with both strict specified deadlines and with statutory intent that for any action for which there is no specified deadline, agency action in advance of the employer's date of need must be completed sufficiently in advance of the date of need to make the completed agency action of practical use to enable the availability of temporary foreign workers at the affected employer's place of employment on the employer's date of need.

3.      ILMC asks for a declaration that failures by the Defendants to have complied with specified deadlines as set forth in applicable regulations and statute as set forth above and with practical or *de facto* deadlines for agency action in advance of each employer's date of need that were sufficiently in advance of each date of need to make the completed agency action of practical use to enable the availability of temporary foreign workers at the affected employer's place of employment on such employer's date of need were unlawful in those cases in which ILMC, as agent, and its respective H-2A

FPDOCS 30018604.1

and H-2B employer clients had completed all requirements lawfully imposed on them or would have been able to complete such requirements if Defendants' actions had been timely;

4.    ILMC asks:

a.    for an injunction requiring Defendants to communicate directly with ILMC and to refrain from bypassing ILMC by communicating only with ILMC's clients with respect to matters affecting the applications, certifications and related interests of ILMC's respective H-2A and H-2B employer clients on whose behalf ILMC has filed applications for certification under the H-2A and H-2B Programs,

b.    for the issuance of a writ of mandamus requiring the Secretary to communicate directly with ILMC in such matters and to refrain from bypassing ILMC by communicating only with ILMC's clients, and

c.    for a declaration that the failures of the Defendants to have communicated with ILMC and the actions of Defendants of bypassing ILMC by communicating only with its respective clients in matters regarding their respective H-2A and H-2B applications for certification and their certifications under such programs were unlawful;

5.    ILMC asks for an award to ILMC of its attorneys' fees and other expenses as well as costs incurred in connection with this action under the Equal Access to Justice

Act, 28 U.S.C. §2412 and 5 U.S.C. § 504 because the actions by the Defendants and their failures to act, including the Defendants' failures to act timely, that are complained of in this action were not substantially justified and there are no special circumstances that make such an award unjust.

Respectfully submitted this 2nd day of July, 2014.

/s/J. Michael Honeycutt
J. Michael Honeycutt
North Carolina State Bar No. 33437
FISHER & PHILLIPS LLP
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
(704) 334-4565
(704) 334-9774, Fax
mhoneycutt@laborlawyers.com

/s/ Ann Margaret Pointer
Ann Margaret Pointer
Georgia State Bar No. 582750
FISHER & PHILLIPS LLP
1075 Peachtree St., NE
Suite 3500
Atlanta, Georgia 30309
(404) 231-1400
(404) 240-4249, Fax
apointer@laborlawyers.com
*Pro Hac Vice granted*

/s/ Leon R. Sequeira
Leon R. Sequeira
Missouri State Bar No. 52403
LAW OFFICES OF LEON SEQUEIRA

FPDOCS 30018604.1

11205 Highway 329
Prospect, KY  40059
(202) 255-9023
(502) 808-6023, Fax
lsequeira@lrs-law.com
*Pro Hac Vice to be filed*

/s/ William Randolph Loftis, Jr.
William Randolph Loftis, Jr.
North Carolina State Bar No. 2774
CONSTANGY BROOKS &SMITH, LLP
100 N. Cherry Street, Suite 300
Winston-Salem, NC  27101
(336) 721-1001
(336) 748-9112, Fax
rloftis@constangy.com

/s/ Robin E. Shea
Robin E. Shea
North Carolina State Bar No. 15862
CONSTANGY BROOKS &SMITH, LLP
100 N. Cherry Street, Suite 300
Winston-Salem, NC  27101
(336) 721-1001
(336) 748-9112, Fax
rshea@constangy.com

- 39 -

## CERTIFICATE OF SERVICE

I certify that on July 2, 2014, I electronically filed the foregoing **First Amended Complaint** with the Clerk of Court using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the following attorney of record:

Geoffrey Forney
Geoff.forney@usdoj.gov


/s/ Ann Margaret Pointer
Ann Margaret Pointer

FPDOCS 30018604.1