# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

INTERNATIONAL LABOR     )
MANAGEMENT CORPORATION,  )
                                  )

     Plaintiff,          )
                                  )
v.                          )    CIVIL NO. 1:14-231-WO-JLW
                                  )
THOMAS E. PEREZ,       )
Secretary of Labor, et al.,     )
                                  )
     Defendants.        )
                                  )

_____

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION TO DISMISS AND
## ALTERNATIVE MOTION FOR SUMMARY JUDGMENT
_____

STUART F. DELERY
Assistant Attorney General

GLENN M. GIRDHARRY
Senior Litigation Counsel

GEOFFREY FORNEY
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
450 5th Street, NW
Washington, DC 20001
202-532-4329
geoff.forney@usdoj.gov

Dated: July 16, 2014        Attorneys for Defendants

The Court is already familiar with the statutory and regulatory requirements governing the H-2A and H-2B programs, as discussed in Defendants' opposition to Plaintiff's motion for a preliminary injunction (ECF No. 22 at 2-7), and in this Court's recent decision granting preliminary injunctive relief. *See* 2014 WL 1668131.

## FACTUAL BACKGROUND

ILMC acts as an agent for filing employer applications within the H-2A and H-2B programs. *See* Administrative Record (AR) 82-83.[1]  DOL learned that ILMC may have misrepresented the number of foreign workers that its client employers needed, and may have forged employer signatures. *See* ILMC Indictment ¶¶ 42-43, 48-55, 75-78, ECF NO. 27.  DOL also learned of allegations that ILMC impermissibly transferred foreign workers between different employers. *Id*. ¶¶ 69-71.  These allegations led DOL to contact ILMC's employer clients directly to confirm that the employers authorized the filing of labor certification applications and that they had an actual need for the number of workers represented on the application forms.  AR 28-30.  Upon receiving signed confirmation from the employers, DOL proceeded to process the applications, and where appropriate, direct recruitment of United States workers.  AR 17-22.  After the employers completed the recruitment and filed recruitment reports, DOL reviewed the recruitment information.  AR 11-15.  Where the employer was unable to locate available United

---

[1]  On March 27, 2014, Defendants filed the administrative record in connection with H & S Farms' application for an H-2A labor certification (ETA Case Number H-300-14049-968284). ECF No. 23-26.  Defendants use this case as an example of DOL's investigation and adjudication of the employers' applications filed by ILMC in this case, which ILMC claims occurred in all of its filings, *see* ECF No. 48 ¶¶ 31-33, before DOL rescinded its policy of contacting directly the employers when agents are involved, *see* ECF No. 34-1.

States workers, DOL granted certification for the appropriate number of foreign workers. AR 2.  In many cases where ILMC acted as the agent, DOL's processing of the application was delayed due to the investigation into the employers' actual need for foreign workers.  AR 28-31.  On April 8, 2014, DOL discontinued the practice of sending notices of deficiency and requests for information directly to employers in cases involving agents.  *See* Carlson Decl. ¶ 6, ECF No. 34-1.

## QUESTIONS PRESENTED

1.  Whether ILMC has standing as an agent to prosecute the claims of an employer client where the statute does not mention any agent participation in the foreign worker programs, and ILMC as an agent does not have a common law right to prosecute any claim on behalf of its principal.

2.  Whether the Court has jurisdiction to grant a writ of mandamus where all of the employer applications have been adjudicated and the issue of any delay is now moot.

3.  Whether the Court has jurisdiction to grant a writ of mandamus to compel future action, which would require an impermissible structural injunction involving the Court's superintending oversight into the day-to-day operations of the agency's program.

4.  Whether the Court has jurisdiction to grant a writ of mandamus to compel the agency to meet directory statutory timeframes that are necessarily intertwined with non-ministerial duties requiring the agency to exercise judgment and discretion.

## ARGUMENT

The Administrative Procedure Act (APA) authorizes the Court to compel agency action unlawfully withheld or unreasonably delayed, *see* 5 U.S.C. § 706(1), but the Court

2

may only compel a "discrete agency action that [the agency] is required to take," *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (*SUWA*); *Village of Bald Head Island v. U.S. Army Corp. of Engineers*, 714 F.3d 186, 195-96 (4th Cir. 2013). Moreover, a writ of mandamus is only warranted if the agency has unreasonably delayed the completion of a non-discretionary, mandatory process. *See In re City of Virginia Beach*, 42 F.3d 881, 885-86 (4th Cir. 1994). Where an agency completes the process that the plaintiff seeks to compel, the claim for relief is moot and the Court lacks jurisdiction over the resolved issue. *See SUWA*, 542 U.S. at 67-68; *Alvarez v. Smith*, 558 U.S. 87, 92-93 (2009).

A plaintiff seeking a permanent injunction must satisfy a four-factor test before the Court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A permanent injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course. *See Montsanto v. Geertson Seed Farms*, 130 S. Ct. 2743, 2761 (2010).

### A. Plaintiff Lacks Standing

As an agent acting on behalf of the employers-in-interest in this case, ILMC fails to establish zone-of-interest standing. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The relevant norm for the zone-of-interest inquiry is the statute whose

violation is the gravamen of the complaint. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 886 (1990); *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 530 (1991). To determine whether a plaintiff falls within the statute's zone of interest, the Court must employ the traditional tools of statutory construction to assess whether a legislatively conferred cause of action encompasses a particular plaintiff's claim. *Lexmark Internat'l v. Static Control Components*, 134 S. Ct. 1377, 1387 (2014).

The fundamental problem with ILMC's case for standing purposes is that the *statute* does not contemplate agents acting on behalf of employers in the H-2A and H-2B programs. *See* 8 U.S.C. §§ 1188, 1101(a)(15)(H)(ii)(b); *Taubman Realty Group Ltd. Partnership v. Mineta*, 320 F.3d 475, 481 (4th Cir. 2003). The Court already rejected Defendants' argument that ILMC lacks zone-of-interest standing, but the Court's reliance on *Lexmark* for its conclusion is misplaced for three reasons. *See* 2014 WL 1668131, *5. First, agents are not mentioned in the H-2A and H-2B statutes, which are the only relevant texts for determining whether Congress intended for ILMC to have a cause of action alleging program violations. *See Lexmark*, 134 S. Ct. at 1387; *Nat'l Wildlife Fed.*, 497 U.S. at 886. The Court improperly focused on DOL's *regulation* for allowing agents like ILMC to act as paper-processors for employers. *See* 2014 WL 1668131, *5. ILMC alleges that it suffered reputational harm and was unable to ensure its continued business of collecting fees from employers for filing applications with DOL because of delays arising from DOL's policy of confirming the *bona fides* of an application by contacting directly the employer. But ILMC's harm as an agent, if such harm even exits, is not even remotely connected to the terms or conditions of the statute, which contemplates

4

recruitment of United States workers and employer compliance with wage and working condition standards. An agent cannot have a cause of action where Congress never contemplated its existence in the foreign labor certification programs.

The Court is correct that other courts have found that employers and employees have standing to challenge DOL's H-2A determinations, *see* 2014 WL 1668131, *5, but ILMC's interest in the H-2A and H-2B programs is as varied from employers and employees' interests as night and day. ILMC does not have a "skin in the game" of employing H-2A or H-2B workers because it is neither an employer nor an employer association, and, as such, it is completely disconnected from the employment obligations or benefits stemming from the terms of the H-2 program requirements. AR 82-83.[2] By the terms of ILMC's "agreement" with its employer clients, ILMC disavows itself of any responsibility for employer compliance with the terms and conditions of the foreign worker programs. *Id*. ILMC does not benefit from the employment of any foreign worker and it does not ensure that the employment of foreign workers meets the statutory requirements. As such, ILMC is a stranger to the statute and does not fall within its zone of interest. ILMC may be extrinsically associated with an employer's desire to hire foreign workers, but under the statute it is the employer-employee relationship that

---

[2] The Court's notion that ILMC has a "skin in the game," 2014 WL 1668131, at *5, stems from a case in which another district court held that the plaintiffs *lacked* standing under the H-2A statute, *see Mendoza v. Solis*, 924 F. Supp. 2d 307, 323 (D.D.C. 2013). The district court's ruling in *Mendoza* was overturned on appeal, *see Mendoza v. Perez*, --- F.3d ---, 2014 WL 2619844 (D.C. Cir. 2014), but the facts at issue in that case are distinguishable from ILMC's situation. In *Mendoza*, the issue was whether prospective employees searching for employment in traditional H-2A jobs lack standing to challenge DOL's standards for open-range occupations. Unlike prospective employees who are contemplated by the statute, ILMC cannot show standing as an agent who does not participate in, or even guarantee compliance with, any H-2A or H-2B program requirements.

matters for determining who has standing, not an outside player who has no "skin in the game" of the interstices of employment.

Finally, the *Lexmark* Court held that the zone-of-interest analysis, as with all areas of statutory interpretation, relies on the received principles of common law that Congress does not specifically abrogate or replace. 134 S. Ct. at 1390. The Court held that the common law concept of proximate cause is relevant for determining causation in the standing context, *id.*, but the general principle that Congress's use of a common law term carries with it the corresponding cluster of meaning applies also in the context of determining whether a plaintiff falls within the statute's zone-of-interest, *cf. Safeco Ins. Co. v. Burr*, 551 U.S. 47, 58 (2007). Under the common law, an agent never had the right to pursue a cause of action on behalf of the principal, which prohibition precludes ILMC's standing in this case.

The statute contemplates "employer" participation in the H-2 programs. *See* 8 U.S.C. §§ 1184(c), 1188(b)(2)-(4), (c)(2)(A), (3)(A)(i)-(ii). Congress does not define the term "employment," *see* 8 U.S.C. § 1101(a), and this silence reflects an expectation that the courts will look to the common law to fill gaps in statutory text, particularly when the undefined term has a settled meaning at common law, *see Clackamas Gastroenterology Associates v. Wells*, 538 U.S. 440, 447 (2003).[3] ILMC may have facilitated an employer's contractual obligation towards the foreign and domestic workers, for example

---

[3] DOL also follows the common law definition of employment in the context of the H-2A, 20 C.F.R. § 655.103(b) (H-2A) (definition of "employee"), and H-2B programs, 73 Fed. Reg. at 78,054 (H-2B) (same).

in the H-2A program, by preparing and filing on the employer's behalf the clearance orders for entry into the H-2A program, *see Frederick County Fruit Growers Ass'n v. Martin*, 968 F.2d 1265, 1268 (D.C. Cir. 1992) (job orders impose contractual obligations on employers), but ILMC's involvement in this contractual agreement is not sufficient to establish its ability to maintain a claim arising from any rights or obligations in this contractual arrangement, *see* Restatement Second of Agency § 372(2).[4] As an agent, ILMC does not have an interest in the employer principal's obligations or benefits under a contractual agreement sufficient for entitling ILMC to maintain an action in its own name on behalf of the employer principal. *Id*. at comment d ("The fact that an agent who makes a contract for his principal will gain or suffer loss by the performance or nonperformance of the contract by the principal or by the other party thereto does not entitle him to maintain an action on his own behalf against the other party."). Looking to the common law on agency in a similar context, the Sixth Circuit held that an agent hired by employers to resolve "coordination of benefits" issues against multiple insurers under a Federal statute did not have standing to sue in its own name because the agent was prosecuting a claim for an employer who was the real party in interest. *See COB Clearinghouse v. Aetna*, 362 F.3d 877, 881-82 (6th Cir. 2004). The same preclusion applies in this case where ILMC as the agent purports to press claims against Defendants

---

[4] Defendants do not concede that the employers obtain any contractual rights against the United States by agreeing to the conditions in a clearance order. Rather, this line of argument is intended to show that even assuming contractual conditions – which would only ever obtain between the employers and the employees – ILMC does not have a common law right to enforce the employer-principal's rights. The employers must bring their own cause of action.

under Federal law on behalf of employers who are the only parties in interest under the statute.[5]

### B. Plaintiff's Claims Are Moot and Otherwise Require the Court to Enter an Impermissible Structural Injunction

ILMC may have identified some cases pending outside the statutory timeframe at the time it filed its lawsuit, *see* ECF No. 29-6 (Exhibit 58), but as indicated at the hearing on April 7, 2014, all of these cases had been resolved, except for one where the employer filed an administrative appeal (M & H Tobacco), which is now certified, and another pending investigation, which has also been resolved (Carolina Farms). Ex. A. Thus, Plaintiff's request for mandamus relief to compel the agency to adjudicate the employers' applications is now moot. *See SUWA*, 542 U.S. at 67-68.

Because federal courts cannot give opinions on "moot questions or abstract propositions," *Calderon v. Moore*, 518 U.S. 149, 150 (1996), a case must be dismissed when an event occurs while a case is pending that makes it impossible for the court to grant relief to a prevailing party, *see Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). A case becomes moot if the plaintiff already obtained all of the relief he sought. *See Friedman's v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002). Because ILMC seeks to compel through mandamus actions that already occurred, its suit is now moot.

The parties may continue to dispute in a theoretical sense whether DOL properly investigated ILMC by sending notices of deficiency and requests for information directly

---

[5]  The Court found that the employers in this case may have been harmed by the delay in processing their application. 2014 WL 1668131, at *13. While Defendants dispute this finding, it is nevertheless irrelevant for standing purposes because the employers are not plaintiffs in this lawsuit and ILMC lacks a common law right to prosecute the employers' claims.

to the employers in this case, but the dispute is no longer embedded in any actual controversy about ILMC's claim to have applications adjudicated in a timely manner. *Alvarez*, 558 U.S. at 93. ILMC may claim that this controversy is capable of repetition, yet evading review, but ILMC bears the burden of making this showing. *See Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013). In any event, ILMC cannot carry its burden of showing that the complained of delay in this case is likely capable of repetition in the future because by ILMC's own admission DOL in large part met the statutory timeframes for adjudication before the agency's practice of sending out requests directly to employers. *See* Eury Decl., ECF No. 31-4, ¶¶ 5-6. But DOL has abandoned its practice of sending requests for information and notices of deficiency directly to the employers where agents are involved, which supports the conclusion that DOL will recur to its historic practice of meeting the statutory timeframes. *See* Carlson Decl., ECF No. 34-1.

ILMC still contends that the Court should issue a permanent, mandatory injunction compelling DOL to meet the statutory timeframes in future cases. Amend. Compl, ECF No. 48 at 34-36. Even if this contention did not involve a completely abstract question over which there is no current, live controversy, the Court is still precluded from entering such an injunction. Over the last thirty years, the Supreme Court has consistently discouraged courts from entering structural injunctions that compel the agency to comply with the law in the future. *See Lyons v. Los Angeles*, 461 U.S. 95, 111-12 (1983). The Court has held that the judiciary may not entertain programmatic challenges that require the courts to oversee agency programs, *Nat'l Wildlife Fed.*, 497 U.S. at 892-94, or embroil the courts in the day-to-day management of agency programs, *Sandin v. Connor*,

515 U.S. 472, 482 (1995). Without a showing that the plaintiff will likely be harmed in a similar way in the future, the Court cannot enjoin the agency to comply with the law in some unknown, future case. *Lyons*, 461 U.S. at 111. This is precisely the type of error that ILMC invites the Court to make in this case by compelling DOL to comply with the statutory timeframes in future cases.

ILMC admits that its problems with DOL emerged in 2014 when the agency began sending inquiries directly to employers in an attempt to confirm the *bona fides* of the applications that ILMC submitted. *See* Eury Decl., ECF No. 31-4, ¶¶ 5-6. Because DOL has abandoned this practice, *see* Carlson Decl. ECF No. 34-1, ILMC cannot show that it will likely be subjected to the processing delays that arose from the now-abandoned practice, which is fatal to ILMC's case, *see Lyons*, 461 U.S. at 111.

ILMC's request for a permanent injunction is contrary to the prohibition against structural injunctions to compel future compliance with the law. Not only has ILMC failed to show that it will likely face the same harm in the future, its requested injunction requires the Court to monitor the agency's compliance with the injunction in the administration of the H-2 programs. If the agency fails to comply with the Court's order because of a reduction in personnel or resources, or because it cannot determine whether an employer has complied with the statutory prerequisites for acceptance or certification, the Court must necessarily act as a superintending tribunal to determine whether DOL acted appropriately, and if not, what remedy would be available. The Court may not be involved in this type of administrative management of an agency program. *See FPC v. Idaho Power Co.*, 344 U.S. 17, 21 (1952). Rather, the only permissible involvement that

10

this Court may have in assessing the agency's compliance with the law is to review individual, final agency determinations on a case-by-case basis. *See Nat'l Wildlife Fed.*, 497 U.S. at 894. Therefore, the Court must dissolve the preliminary injunction and dismiss ILMC's claim to compel the agency to comply with the law in the future.

### C. Plaintiff's Statutory Claims Fail

ILMC claims that its employer clients are entitled to an acceptance or certification of any pending H-2A application if DOL does not process the applications within the statutory timeframes for making the required merits determinations. ECF No. 48 at 34-36. In addition to the jurisdictional defects with ILMC's case, the Court is also precluded from compelling DOL to issue acceptance letters or certifications based solely on the statutory timeframes. Plaintiff's reliance on Section 1188(c) to strip DOL of authority to process H-2A applications after the statutory deadline fails because the statutory timing requirements are procedural. *See Brock v. Pierce County*, 476 U.S. 253, 260-62 (1986).

The statute provides that an "employer shall be notified" in writing within seven days of the date of filing an H-2A application that it does not meet the standards for approval. 8 U.S.C. 1188(c)(2)(A). If DOL accepts an application for processing it "shall make, not later than 30 days before the date [the employer's] labor or services are first required to be performed, the certification described" in the statute. 8 U.S.C. § 1188(c)(3)(A). But to issue a final determination regarding the acceptance and certification, DOL must make a complex discretionary assessment of the domestic labor market, the prevailing wage rates, and the relevant employment conditions at the employer's facility. *See* 8 U.S.C. §§ 1188(b), (c)(3)-(4). The statute does not specify a

consequence for noncompliance with the timing provisions when DOL continues to evaluate the merits of an application, which is fatal to ILMC's attempt to strip DOL of authority to act outside the statutory timeframe. *See U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993). Therefore, DOL is not precluded from acting outside the statutory timeframe to ensure the employers' compliance with the substantive terms of the statute. *See Holland v. Pardee Coal Company*, 269 F.3d 424, 433-37 (4th Cir. 2001).

The Court has already held that it lacks jurisdiction to enjoin DOL with respect to any positive recruitment efforts or to direct DOL to find a particular application deficient or sufficient. 2014 WL 1668131, at *9. The Court also held that it lacks jurisdiction to find that particular circumstances are sufficient to justify certification. *Id.* These matters are, the Court correctly held, within DOL's discretion and the Court cannot compel the agency to certify a particular application where an employer has not met the statutory prerequisites. *Id.* Other courts have similarly held that a thirty-day statutory timeframe for conducting an investigation of an employer's participation in a temporary foreign worker program does not strip DOL of jurisdiction to act when the agency fails to meet the deadline. *Cyberworld Enterprise Tech. v. Napolitano*, 602 F.3d 189, 196 (3d Cir. 2010). The Third Circuit rejected the same flawed argument that ILMC raises in this case. ECF No. 19. The employer in *Cyberworld* relied on Congress's use of the word "shall" to create a jurisdictional limitation on DOL's ability to complete an investigation after the thirty-day statutory time frame. 602 F.3d at 197. Following a line of Supreme Court cases, the Third Circuit held that an employer cannot simply rely on the word "shall" to undercut DOL's ability to act beyond a statutory deadline. *Id.* at 198.

Similarly, ILMC's reliance on "shall" in this case to strip DOL of authority to adjudicate H-2A applications on the merits after the thirty-day statutory timeframe must fail.

Despite the timing requirements, Congress still expects DOL to ensure that the importation of foreign workers will not harm the domestic labor market. 8 U.S.C. § 1188(c)(3)(A)(ii); H.R. Rep. No. 99-682, pt. 1, at 81. The statue subordinates the employers' interests in hiring a foreign workforce to the overriding mandate to ensuring that employers pay an adequate wage rate, provide insurance and adequate housing, and determine whether domestic workers are available for the job opportunity. *See* 8 U.S.C. §§ 1188(b), (c)(3)-(4). Thus, the statutory timeframes do not require DOL to issue a decision despite its failure to finally complete its merits determination. *See Hosh v. Lucero*, 680 F.3d 375, 382 (4th Cir. 2012).[6]

The remaining question is whether the Court may through a writ of mandamus compel the issuance of an acceptance letter within seven days of receipt of the employer's application. In addition, ILMC may still press the point that the Court has authority to compel DOL to issue certifications by the thirtieth day regardless of circumstance. Amend. Compl, ECF No. 48 at 36. Absent a determination on a case-by-case basis that the agency acts unreasonably under the circumstances, the answer to both

---

[6] Defendants respectfully disagree with the Court's holding that "the statutory deadlines are mandatory, not discretionary, allowing this court to 'compel the agency to act.'" 2014 WL 1668131, *9. As stated in Defendants' brief in opposition to Plaintiff's motion for a preliminary injunction, *see* ECF No. 22-1 at 13-17, the statutory language, legislative history, and Supreme Court and Fourth Circuit case law stand in direct conflict with the Court's conclusion, *see Hosh*, 680 F.3d at 382. Defendants will not repeat the arguments here, but preserve them, if necessary, for appeal.

questions is that the Court lacks authority to grant the writ based on nothing more than the statutory timeframes.

As a practical matter, ILMC's request for a permanent injunction through mandamus leads to absurd results. If DOL is forced to treat the directory timeframes in the statute as mandatory under a permanent injunction, the agency will need to reject applications before the seventh day or deny certifications by the thirtieth day if it is not able to complete an assessment of the merits of the employer's case. Otherwise DOL would violate the statute by granting acceptance or certification without the proper assurances to protect the domestic labor market. The employer could then appeal the denial to an administrative law judge (ALJ), and if the ALJ finds error, remand the case back to the agency for continued processing. *See* 8 U.S.C. §§ 1188(e)(1); 20 C.F.R. §§655.141(b)(4), 655.177(b)(2). Therefore, a permanent injunction intended to prevent delay would perversely result in further delay by pushing employers into the statutorily mandated administrative appeal process to address the hurried, initial decision process that ILMC asks to have imposed on the agency.

Setting aside the absurdity of ILMC's request, the Court lacks the authority to provide the requested mandamus relief because DOL's processing of applications within the statutory time frames is intrinsically tied with the discretionary, non-ministerial evaluation of the merits of each employer's application, which precludes mandamus relief. *See Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 221 (1930).

The legislative history of the mandamus statute, 28 U.S.C. § 1361, reveals that the statute's construction turns upon traditional mandamus law, *see Richardson v. U.S.*, 465

14

F.2d 844, 848 (3d Cir. 1971), *rev'd on other grounds*, 418 U.S. 166 (1974). Similarly, the APA provision allowing the Court to compel agency action unlawfully withheld, 5 U.S.C. § 706(1), carries forward the traditional parameters defining the Court's authority to issue a writ, *see SUWA*, 542 U.S. at 63. Historically, mandamus has only ever been proper to compel ministerial acts, and "where the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." *Wilbur*, 281 U.S. at 218. ILMC cannot identify, nor does the Court's preliminary injunction order rest upon, a purely ministerial act divorced from DOL's exercise of judgment or discretion. Because DOL must apply a complex set of statutory and regulatory standards in assessing an employer's application to determine the appropriate wages, working conditions, housing, and recruitment regime, the decision to accept or reject an application is not purely ministerial and amenable to mandamus relief. Similarly, an evaluation of an employer's recruitment efforts, United States worker applicants, and physical housing conditions, among other things, requires the application of law to changing facts and circumstances, which can never be purely ministerial in nature.

ILMC's request for mandamus relief to compel DOL to issue notices of acceptance and certifications regardless of circumstance, based solely on the statutory timeframes, cuts contrary to well-established limits on mandamus relief. The parameters of the writ of mandamus were settled long ago under the Mansfield Court, *see* Henderson, *Foundations of English Administrative Law* 140-42 (Harvard 1963), which is

the basis for the doctrine in the United States, *see Marbury v. Madison*, 5 U.S. 137, 168-69 (1803) (using Mansfield's formulation).  In *R. v. Askew*, the King's Bench held, per Mansfield, that the court could not compel a corporate association to admit a member where the statute provides the general conditions for membership but leaves to the association the "judgment and discretion for determining" whether a particular member should be admitted.  4 Burrow 2186, 2188 (8 Geo. III 1768) (Ex. B).  As long as the association's decision follows its procedural rules for evaluating the applicant, the court would not interrupt the exercise of discretion as being arbitrary and capricious.  *Id.* at 2189.  The converse situation of placing a corporate stamp on a document falls within the scope of mandamus relief where the statute does not provide a rule for withholding the stamp because such a ministerial act does not require the application of any legal standard.  *R. v. Windham*, 1 Cowp. 378 (16 Geo. III 1776); *Marbury*, 5 U.S. at 171.[7]

The dichotomy between a ministerial and discretionary action for determining the warrant of mandamus relief was incorporated into a long line of cases in this country. *See Kendall v. United States*, 37 U.S. 524, 613-14 (1838).  More importantly, the dichotomy is settled as strictly divided:  the court can only compel an agency action that is *purely* ministerial, where nothing is left to discretion.  *See Mississippi v. Johnson*, 71 U.S. 475, 498-99 (1866); *U.S. v. Comm'r*, 72 U.S. 563, 565 (1866); *Bayard v. U.S.*, 127

---

[7]  Similarly, the English decision that Chief Justice Marshall cites, *see Marbury*, 5 U.S. at 168, for determining mandamus relief also involved a situation where the court ordered the purely ministerial act of admitting a duly elected member to office.  *Rex v. Barker*, 3 Burrow 1265, 1269-70 (2 Geo. III 1761).  Ordering the admission of the elected office holder was necessary "to prevent disorder from the failure of justice, and defect of police."  *Id.* at 1267.

U.S. 246, 250 (1888). Relatedly, the action of applying statutory standards to a set of facts has always been considered an act of judgment and discretion for purposes of evaluating the propriety of mandamus relief. *See Gains v. Thompson*, 74 U.S. 347, 353 (1868); *Decatur v. Paulding*, 39 U.S. 497, 515-16 (1840).[8] The same strict dichotomy holds today with the application of law still considered an act of discretion. *See SUWA*, 542 U.S. at 63-64; *Members of Waste Merchants*, 281 U.S. at 221.

The problem with ILMC's request for mandamus relief is that there is no way to untangle the discretionary law applying function from the putatively ministerial action of issuing a decision within a specific timeframe. The issuance of a notice of acceptance and then a certification requires DOL to make the appropriate factual findings in each case and determine whether the employer's recruitment, wages, working conditions, and housing, among other things, advance the statutory goal of protecting the domestic labor market. The application of these statutory standards to each individual employer is not a ministerial act or mechanical application of a checklist. For example, the agency must make an onsite inspection of an employer's housing to determine whether it is safe and adequate under the appropriate Federal, state, and local standards, which often involves difficult questions of fact and law, 75 Fed. Reg. at 6908-10, as evidenced by conflicting ALJ decisions on these issues (Ex. C). There is no way to extricate these discretionary evaluations from the timing of DOL's decision. By compelling the agency to issue a

---

[8] According to Professor Mashaw, the general tendency in the development of mandamus law after *Marbury* was to limit its scope to a "very narrow arc." Mashaw, *Creating the Administrative Constitution* 212-13 (Yale 2012). Only "purely ministerial actions" fell within the scope of mandamus. *Id.* at 216.

decision within the statutory timeframe regardless of circumstance, the Court is impeding upon the discretionary aspects of the agency's decision making process.

Even if the Court could separate out the discretionary from the ministerial aspects of DOL's adjudication, a writ of mandamus is only warranted if DOL refuses to process an application or unreasonably withholds adjudication. *See* 5 U.S.C. § 706(1); *ICC v. Members of Waste Merchants*, 260 U.S. 32, 34 (1922). But DOL's processing of the employers' applications shows that a writ is not appropriate because the agency has not unreasonably delayed the process. *In re City of Virginia Beach*, 42 F.3d 881, 885 (4th Cir. 1994). Based on the statutory mandate to ensure the availably of jobs to domestic workers and to protect the domestic labor market from the adverse effect of foreign labor, *see* 8 U.S.C. §§ 1188(a)(1), (c)(3)(A)(ii), DOL's processing of the applications based on an investigation of the employers' purported job opportunities in light of the allegations against ILMC cannot be considered an "egregious and unreasonable delay" warranting mandamus relief, *see Virginia Beach*, 42 F.3d at 885-86. DOL must ensure that employers are importing foreign workers only where there is an actual labor shortage. 20 C.F.R. § 655.103(a). DOL must also direct the appropriate test of the labor market based on the employer's representations in the application. 20 C.F.R. §§ 655.150-155. If an agent misrepresents the number of workers needed in a particular location, or has foreign workers transferred to undisclosed job sites, it calls into question the very integrity of the temporary foreign worker program and makes a sham out of the required labor market test. DOL's investigation of these relevant issues over the course of several weeks

18

beyond the statutory timeframe cannot be considered an unreasonable delay. *See Virginia Beach*, 42 F.3d at 885.

Nor did DOL act unlawfully by making inquiries directly with the employers in this case. For example, the Paperwork Reduction Act (PRA) does not preclude DOL from sending directly to employers additional questions relating to their request for benefits under the statute. *See Shell Oil Co. v. Babbitt*, 945 F. Supp. 2d 792806 (D. Del. 1996). The PRA does not apply to the collection of information during the conduct of an administrative action or investigation involving an agency against a specific individual or entity. *See* 44 U.S.C. § 3518(c)(1)(B)(ii). An agency may during an investigation collect additional facts that go beyond the information listed on the forms that an applicant initially filed with the agency. *See MacKenzie Medical Supply v. Leavitt*, 506 F.3d 341, 350 (4th Cir. 2007). DOL's request for information directed to the employers seeking to import foreign workers in this case is similarly exempt from the PRA requirements.

Defendants also respectfully disagree with the Court's finding that DOL may only investigate an agent by initiating debarment proceedings. 2014 WL 1668131, *9; 20 C.F.R. § 655.182(b). The Court's conclusion is legally and factually untenable. Just because a regulation provides for the absolute exclusion of an agent through debarment does not mean that DOL may not pursue less restrictive means for determining whether the agent has committed fraud in its filings. *See Alberta Gas v. Celanese Corp.* 650 F.2d 9, 13 (2d Cir. 1981). DOL has inherent authority, as does any administrative agency, to ensure the integrity of its programs. *See Tokyo Kikai v. U.S.*, 529 F.3d 1352, 1361 (Fed. Cir. 2008). The Court's conclusion also leads to the absurd result of requiring DOL to

19

approve a potentially fraudulent application without first allowing the agency to resolve any doubts about the *bona fides* of the application. If DOL were required to follow a strict prohibition against contacting employers directly when DOL receives information about possible fraud, the agency may be forced to accept an application and issue certification even where the application violates the statute just because DOL was not able to complete a debarment proceeding in time to prevent an agent from filing the fraudulent application. This would be contrary to Congress's strict directive to protect United States workers in all cases when adjudicating applications for the admission of foreign workers. *See* 8 U.S.C. §§ 1188(a)(1), (c)(3)(A).

Finally, the Court is incorrect that an agency must strictly comply with a regulatory timeframe in all cases. 2014 WL 1668131, *10. Although an agency's rules are ordinarily binding, *Columbia Broadcasting System v. U. S.*, 316 U.S. 407, 418 (1942), it is always within the agency's discretion to relax or modify procedural rules adopted for the orderly transaction of agency business, *see Am. Farm Lines v. Black Ball Freight*, 397 U.S. 532, 539 (1970). Even if the processing rule is written in mandatory terms, it is not strictly binding on the agency. *See Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1230 (10th Cir. 2004). Thus, DOL's procedural rules in this case directing the agency to act with dispatch in processing applications cannot form the basis for finding that the agency acted unlawfully in all cases, regardless of circumstance, where it missed the regulatory deadline because of a legitimate investigation into the merits of the application. *See Oy v. U.S.*, 61 F.3d 866, 873 (Fed. Cir. 1995).

Respectfully submitted this 16th day of July, 2014:

STUART F. DELERY
Assistant Attorney General

GLENN M. GIRDHARRY
Senior Litigation Counsel

By: /s/ Geoffrey Forney
GEOFFREY FORNEY
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
450 5th Street, NW
Washington, DC 20001
202-532-4329/ geoff.forney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2014, I electronically filed the foregoing

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT with the Clerk of

Court by using the CM/ECF system, which will provide electronic notice and a hyper

link to this document to the following attorneys of record for the plaintiff:

    J. MICHAEL HONEYCUTT: mhoneycutt@laborlawyers.com

    ROBIN E. SHEA:  rshea@constangy.com

    WILLIAM RANDOLPH LOFTIS , JR:  rloftis@constangy.com

    ANN MARGARET POINTER:  apointer@laborlawyers.com


                /s/ Geoffrey Forney_____
                GEOFFREY FORNEY
                Senior Litigation Counsel
                United States Department of Justice